# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT KNOXVILLE
September 28, 2010 Session

## STATE OF TENNESSEE v. JEREME DANNUEL LITTLE

**Appeal from the Criminal Court for Hamilton County**
**No. 253374     Rebecca J. Stern, Judge**

---

**No. E2009-01796-CCA-R3-CD - Filed January 3, 2012**

---

A Hamilton County grand jury charged the defendant, Jereme Dannuel Little, in case number 253372, with two counts of aggravated robbery, *see* T.C.A. § 39-13-402 (2006), and, in case number 253374, with one count of especially aggravated kidnapping, *see id.* § 39-13-305. At the close of proof at trial, the trial court granted the defendant's motion for judgments of acquittal on the two aggravated robbery counts. The jury, however, convicted the defendant of especially aggravated kidnapping, and the trial court imposed a sentence of 18 years' incarceration in the Tennessee Department of Correction. On appeal, the defendant contends that the trial court erred by (1) failing to inform the jury regarding the judgments of acquittal of the aggravated robberies; (2) failing to instruct the jury regarding corroboration of accomplice testimony; (3) instructing the jury regarding criminal responsibility for the conduct of another; (4) prohibiting counsel from "putting into evidence or mentioning" during closing argument that the defendant had been acquitted of the two counts of aggravated robbery; and (5) allowing the district attorney to argue at closing that the defendant had committed the aggravated robbery offenses, as relevant to motive for the especially aggravated kidnapping charge. Additionally, the defendant contends that the cumulative effect of the trial court's errors denied him a fair trial. Discerning no reversible error, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3; Judgment of the Criminal Court Affirmed**

JAMES CURWOOD WITT, JR., J., delivered the opinion of the court, in which NORMA MCGEE OGLE, J., joined. CAMILLE R. MCMULLEN, J., filed a dissenting opinion.

Jeffery S. Schaarschmidt, Chattanooga, Tennessee, for the Appellant, Jereme Dannuel Little.

Robert E. Cooper, Jr., Attorney General and Reporter; Renee W. Turner, Assistant Attorney General; William H. Cox, III, District Attorney General; and Boyd M. Patterson, Jr., Assistant District Attorney General, for the Appellee, State of Tennessee.

## OPINION

On July 10, 1998, at approximately 1:00 a.m., two men armed with handguns entered the Chattanooga home of Chris Rogers and stole jewelry and a bucket of pre-rolled coins from Mr. Rogers, his stepson Bruce Jackson, and Mr. Rogers' 12-year-old grandson. Mr. Rogers recalled that on the night of the incident, a man later identified as Demetrius Grayson came to his porch, knocked on the door, and asked for Mr. Jackson. Mr. Rogers told Mr. Grayson that Mr. Jackson was asleep, but Mr. Grayson told Mr. Rogers that "it couldn't wait." Mr. Jackson came to the door and spoke with Mr. Grayson, who then requested a glass of water. When Mr. Jackson went to retrieve the water, another man with a shirt covering his face came from around the house and forced his way inside the home. Mr. Grayson followed the man inside, where both men demanded money and drugs.

The men took Mr. Rogers to the back bedroom of the home in search of money. The unidentified man grabbed a blanket from the bed, put it over Mr. Rogers' head, and moved Mr. Rogers to the bathroom. The men also moved Mr. Jackson to the bathroom, where the men ordered Mr. Rogers and Mr. Jackson to lie on the floor. Mr. Rogers heard one man tell them not to get up for 10 or 15 minutes. Mr. Rogers and Mr. Jackson complied. They reported the crime later that day. Mr. Jackson believed that he "knew of" Mr. Grayson because he went to school with Mr. Grayson's brother.

The July 1998 case remained unsolved for nearly seven years. Sometime in early 2005, Chattanooga Police Department Detective Bill Phillips visited Mr. Grayson, who was incarcerated, regarding other unrelated aggravated robberies. During their interview, Mr. Grayson confessed his role in the Rogers' offenses. The victims were contacted by authorities, and on March 23, 2005, the grand jury returned indictments for two counts of aggravated robbery in case number 253372. Soon thereafter, the grand jury also charged the defendant with the July 10, 1998 especially aggravated kidnapping of Mr. Grayson in case number 253374. The cases were joined for trial.

At trial, both Mr. Rogers and Mr. Jackson testified that they had been robbed in the summer of 1998. Neither victim, however, identified the defendant as the second participant in the offenses.

Mr. Grayson testified at trial and acknowledged that he had a significant criminal history consisting of felony theft, robbery, sale of cocaine, and two misdemeanor thefts. Mr. Grayson explained that he had known the defendant "since [he was 12, 13]" years old. Mr. Grayson testified that in July 1998, the defendant approached him "with a proposition" to rob a house believed to be a drug house based on the constant "in and out

traffic." Mr. Grayson testified that they watched the house for weeks. He confirmed that he knew Mr. Jackson prior to the offenses. Mr. Grayson testified consistently with the victims' accounts of the offenses. He explained that when he and the defendant could not find any money or drugs, the defendant became agitated and said that he wanted to "bust somebody that night." Mr. Grayson explained this meant that the defendant wanted to shoot someone. According to Mr. Grayson, the defendant ordered him to watch the victims while the defendant searched the back room of the house. Mr. Grayson recalled that the defendant returned from a back room with baggies, scales, and jewelry. Mr. Grayson testified that the still-angry defendant put a white blanket over Mr. Rogers' head and moved Mr. Rogers to the bathroom. Mr. Grayson testified that he then left the home because he had agreed to participate in "a robbery, not [take] part [in] a murder."

Mr. Grayson testified that later that same morning, the defendant "pulled up on [Mr. Grayson] in a [junkie's] car." The defendant told Mr. Grayson not to run or he would shoot him. Mr. Grayson complied with the defendant's instructions. Mr. Grayson testified that the defendant took him to a crack house on Davenport Street where the defendant ultimately tied Mr. Grayson to a chair and tortured him for hours. Mr. Grayson recalled that he was pistol-whipped and forced to consume crack cocaine and dog feces. Mr. Grayson believed that the defendant was angry because Mr. Grayson had left Mr. Rogers' home earlier that day. Eventually, Mr. Grayson was able to escape by unlocking a window and jumping out of the house. He admitted at trial that he was hoping for a "time cut" or a reduction on the sentence he would receive for his involvement in the aggravated robbery offenses if he testified truthfully.

On cross-examination, Mr. Grayson revealed that he lived with Lewis "Two-Hype" Buchanan and Gabriel Buchanan "off and on" and had a set of keys to the Buchanan brothers' house. Although the Buchanan brothers paid the rent, the house was leased under an unknown "junkie's" name. During cross-examination, Mr. Grayson could not confirm the Buchanan brothers' exact address or the specific street he was walking on when the defendant forced him into his car. Mr. Grayson testified, however, that the Buchanan brothers' house was the same house where he was tortured by the defendant.

On March 11, 2005, investigators contacted Kelvin Ellison who was, at the time, incarcerated for attempted aggravated robbery and a federal probation violation. A recording of his interview was played for the jury at trial. At the onset of the interview, the investigators told Mr. Ellison that they were investigating a 1998 robbery offense that also involved the defendant's tying Mr. Grayson to a chair and that the investigators needed someone "to corroborate what this person told [them] happened to him." Mr. Ellison then recalled certain events from summer 1998.

-3-

Mr. Ellison testified at trial that he had gone to the Buchanan brothers' house to confront one of the Buchanan brothers about the recent theft of Mr. Ellison's car. Mr. Ellison testified that when he entered the Buchanan home, he saw Mr. Grayson "like in a chair leaning to the side" with "dog stuff, you know, like feces" on Mr. Grayson's shirt and mouth. He testified that Mr. Grayson also appeared to have been "roughed up some" because his face was puffy and swollen. Mr. Ellison said that the defendant was in the room yelling "something about . . . people running off on him and messing him over[.]" Mr. Ellison, however, did not hear any reference to a robbery.

Mr. Ellison acknowledged that he had a significant criminal history including convictions of robbery, attempted robbery, aggravated assault, and aggravated burglary and that he was categorized as an armed career criminal in the federal system. In the recording of the interview played for the jury, Mr. Ellison discussed his knowledge of Mr. Grayson's presence at the Buchanan brothers' house and his expectation of a third sentence reduction if he testified regarding the especially aggravated kidnapping offense. Mr. Ellison testified that he had less than a year left to serve on his sentence when he agreed to testify in the especially aggravated kidnapping trial.

Mr. Ellison also admitted that he had previously exchanged harsh words with the defendant during a jail visitation. He explained that as he was coming down the hallway, the defendant had his "mean mug on." Mr. Ellison asked the defendant whether he had a problem and said to the defendant, "[M]an, you got me fucked up. I'll kick your ass."

Gene Planer, a deputy corrections officer, testified that he prepared a report regarding the incident. Officer Planer explained that the defendant did not provoke Mr. Ellison and that Mr. Ellison repeatedly stated, "[M]other f*****, I'm going to kick your ass." Officer Planer testified that Mr. Ellison threatened to kill the defendant. Officer Planer said that the defendant was not "written-up" for the altercation.

At the close of the State's proof, the defendant moved for judgments of acquittal on the aggravated robbery charges based upon a lack of evidence to corroborate the testimony of Mr. Grayson, an accomplice. Despite voicing an inclination to grant the defendant's motion, the trial court decided to allow time for a law clerk to research the issue and reserved ruling until the close of all proof in the case.

Terna Hatten testified for the defendant that Mr. Ellison approached him once while both men were incarcerated. According to Mr. Hatten, Mr. Ellison learned of a disagreement between the defendant and Mr. Hatten and solicited Mr. Hatten to "lie and testify that [the defendant] had done something that he didn't do." Specifically, Mr. Ellison requested Mr. Hatten "[t]o say that [the defendant] robbed [Mr. Grayson] and kidnapped [Mr.

-4-

Grayson] and supposedly made him eat dog doo doo or some old thing like that." Mr. Hatten said that Mr. Ellison informed him that "Two Hype" (Lewis Buchanan) actually committed the robberies and kidnapping. Mr. Hatten testified at trial that he was not affiliated with either the Athens Park Bloods or the Highland Park Gangsters.

Lesley Allen, Mr. Grayson's cousin who was also incarcerated at the time of trial, testified that Mr. Grayson told him about the robberies and the kidnapping. Mr. Allen said, however, that Mr. Grayson told him "Two-Hype" committed the crimes. Mr. Allen denied telling federal authorities that the defendant admitted to the offenses.

Johnny Carter, an admitted drug addict who at one time lived in the Buchanan brothers' home, also testified on behalf of the defense. Although he did not provide an explanation, he stated that the Buchanan brothers and Mr. Grayson "wanted to hurt [the defendant]" and were "talking about killing him." He also recalled that Mr. Grayson had taken three ounces of crack cocaine from the Buchanan brothers. He stated that the Buchanan brothers "went out looking for [Mr. Grayson]" and "I guess, they beat him down." He was at the Buchanan brothers' home when the brothers returned with Mr. Grayson. He recalled that the Buchanan brothers were angry with Mr. Grayson. Mr. Carter left the home because he "didn't want to witness" what the brothers were going to do to Mr. Grayson.

The defendant testified and denied any involvement in the aggravated robberies. The defendant recalled that, at some point prior to the aggravated robberies and especially aggravated kidnapping, he visited his daughter, who lived in "Crip territory." He encountered one of the Buchanan brothers and Mr. Grayson. He explained that he was wearing a "Cuban flag shirt" which contained the color red on it, which could have been construed as an affiliation with the "Bloods." He testified that Mr. Grayson and Mr. Buchanan approached him, "[t]alking about that they Crippin . . . [a]nd you around here flamed up with that red on, it could get you knocked off." The defendant testified that "it was like [he] had done disrespected them" because he did not run away from the encounter.

The defendant further denied any involvement in the especially aggravated kidnapping of Mr. Grayson. The defendant testified that he had never been to the Buchanan home "in his lifetime." He explained that he would have been "a fool" to do so and stated, "I'm from Alton Park, born and raised, you know, and I ain't in no gang, but you affiliated with what neighborhood you from [sic]. That's how people – that's just how it is." He added, "People done got killed [for wearing shirts in certain colors]. For something as simple as wearing the wrong color in the wrong place." The defendant stated that if the testimony of Mr. Grayson were true, the defendant would be a dead man.

At the close of proof, the defendant renewed his motion for judgments of acquittal. The trial court then ruled that there was insufficient evidence to corroborate Mr. Grayson's testimony and granted the motion as to the aggravated robbery charges only. Following the ruling, the trial court stated:

> I'll be instructing them . . . something to the effect of indictment number 253372 charges the defendant with two counts of aggravated robbery. I have removed these counts under this indictment from your consideration. You are not to concern yourself with this or to speculate as to the reason why.

Prior to closing argument, the following discussion occurred:

| | |
|---|---|
| Defense Counsel: | I think, Your Honor, that the jury should be informed that it hasn't met the legal standard. |
| The Court: | No, that's not their business. My legal rulings are not their business. |
| . . . . | |
| The Court: | I don't explain to them my rulings on evidence. I'm not allowing that in because if the rules of evidence say . . . I don't explain my legal rulings to the jury. |
| Defense Counsel: | But the fact is Your Honor, he's been acquitted on these charges. |
| The Court: | So. They're not supposed to have anything to do with that. |
| Defense Counsel: | But the problem is that the motive, the motive for the alleged kidnapping is this alleged robbery. |
| The Court: | Yes. But he's been acquitted not because he didn't do it. |
| The State: | . . . I'm planning on still talking about the robbery because it still leads up to the kidnapping. But he's not being charged with it. It's the whole story they get to hear. |
| The Court: | Yeah, I'm not going to go into that. I'm just going to say I've removed these counts under this indictment, you're not to |

                               concern yourself or speculate as to the
                               reason why.
         Defense Counsel:      If the Court would note my exception.

        Following the arguments of counsel and instructions to the jury, the jury
convicted the defendant of especially aggravated kidnapping. At a subsequent sentencing
hearing, the court imposed a sentence of 18 years' incarceration as a violent offender.

        On appeal, the defendant presents an array of issues focusing upon the failure
of the trial court to inform the jury that the court had granted the defendant's motion for
judgments of acquittal on the aggravated robbery charges. He specifically argues that the
trial court's refusing to inform the jury of the acquittals and precluding defense counsel's
argument concerning the acquittals deprived the defendant of due process of law. In related
issues, the defendant claims that the trial court should have instructed the jury regarding
corroboration of accomplice testimony as it related to the aggravated robbery charges[1] and
that principles of double jeopardy and estoppel precluded the State's argument concerning
the aggravated robberies as relevant to motive in the especially aggravated kidnapping
offense. The defendant also contends that the trial court erred by instructing the jury
regarding criminal responsibility for the conduct of another relative to the especially
aggravated kidnapping offense. We will address each claim in turn.

                                  *I. Waiver*

        At the outset, we begin by noting that the defendant is not claiming – and really
cannot claim profitably – that the trial court erred by admitting evidence at trial concerning
the defendant's perpetrating the aggravated robberies. The aggravated robbery charges were
jointly tried with the especially aggravated kidnapping charge. That being said, the law of
severance is logically implicated when evidence is admitted to directly establish an offense
on trial and the defendant claims error because that evidence may influence the jury to
convict a defendant on a different but jointly tried charge. *See* Tenn. R. Crim. P. 14.

        Issues concerning the propriety of joinder of multiple offenses must be
presented and resolved pretrial because the determination whether multiple charges based
on alleged multiple offenses should be joined or separated for trial establishes a format for
the presentation of evidence at trial. *Bruce v. State*, 378 S.W.2d 758, 760 (1964); *see* Tenn.
R. Crim. P. 13(b) (providing that trial court may order severance of offenses before trial);

---

[1]"[A] conviction may not be based solely upon the uncorroborated testimony of an accomplice to
the offense." *State v. Bane*, 57 S.W.3d 411, 419 (Tenn. 2001) (citing *State v. Stout*, 33 S.W.3d 531 (Tenn.
2001); *State v. Bigbee*, 885 S.W.2d 797, 803 (Tenn. 1994); *Monts v. State*, 379 S.W.2d 34, 43 (Tenn. 1964)).

Tenn. R. Crim. P. 14(a)(1)(A) (providing that defendant, except in the event of a later-arising ground, shall move to sever offenses "before trial"). Given the importance of a pretrial hearing in determining a severance issue, a defendant's failure to move pretrial for a severance (or to object pretrial to a motion for consolidation) constitutes a waiver of the issue. *State v. Evans*, 745 S.W.2d 880, 884 (Tenn. Crim. App.1987); *State v. Ricky Lee Beamon*, No. E2005-01656-CCA-R3-CD (Tenn. Crim. App., Knoxville, Apr. 23, 2007); *see Spicer v. State*, 12 S.W.3d 438, 443 (Tenn. 2000).

We find no pretrial defense motion to sever offenses or an objection to the consolidation of offenses in the record, a telling lapse when the consolidation resulted in an evidentiary format that entailed the admission of the aggravated robbery evidence. Accordingly, we do not address the propriety of the admission of evidence of the defendant's role in the aggravated robberies in the context of the consolidated trial, and the defendant cannot now complain that such evidence was put before the jury.

In addition to the waiver occasioned by the failure to seek severance of the offenses, the defendant waived any claim that the evidence of the aggravated robberies was improperly admitted by failing to move to strike such evidence after the acquittal of the aggravated robberies was ordered. Tennessee Rule of Evidence 103(a) says,

> Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected, and . . . [i]n case the ruling is one admitting evidence, a timely objection or motion to strike appears of record, stating the specific ground of objection if the specific ground was not apparent from the context. . . .

Tenn. R. Evid. 103(a)(1). The circumstances in the present case exemplify the proper use of the motion to strike. After the trial court issued the judgments of acquittal, the defendant could have, and should have, moved to strike any evidence related to the robberies; because he did not, Rule 103(a)(1) mandates the waiver of any claim that evidence of the aggravated robberies was improperly admitted.

### II. Trial Court's Failure to Inform the Jury of the Judgments of Acquittals and Limitation of Defense Argument Concerning the Same

Having brought the defendant's claim more clearly into focus, we now consider his complaints about the failure to disclose to the jury the acquittal on the aggravated robbery charge, including the claim that the trial court should have instructed the jury regarding the judgments of acquittal and the legal standards concerning corroboration of accomplice

testimony upon which the trial court's ruling rested. To be sure, a trial court is obliged "to give a complete charge of the law applicable to the facts of the case," *State v. Harris*, 839 S.W.2d 54, 73 (Tenn. 1992), and the denial of a complete charge may deny a defendant his constitutional right to trial by a jury, *see State v. Teel*, 793 S.W.2d 236, 249 ("[A] defendant has a constitutional right to a correct and complete charge of the law[.]"). A charge is prejudicial error "if it fails to fairly submit the legal issues or if it misleads the jury as to the applicable law." S*tate v. Hodges*, 944 S.W.2d 346, 352 (Tenn. 1997) (citing *State v. Forbes*, 918 S.W.2d 431, 447 (Tenn. Crim. App. 1995)).

In the present case, we see no justification for the trial court's refusal to inform the jury of the judgments of acquittal on the aggravated robbery charges, especially given the defendant's request for disclosure. Likewise, we see no legal basis for disallowing the defendant to refer to the judgments of acquittal during closing argument, especially in the face of the State's argument that drew upon the evidence of the aggravated robberies to establish motive for the especially aggravated kidnapping. This determination, however, does not necessarily result in relief for the defendant. *See* Tenn. R. App. P. 36(b) ("A final judgment from which relief is available and otherwise appropriate shall not be set aside unless, considering the whole record, error involving a substantial right more probably than not affected the judgment or would result in prejudice to the judicial process.").

We hold that these errors were harmless beyond a reasonable doubt. First, as mentioned above, the jury already knew of the claim that the defendant committed two prior aggravated robberies. Also, as explained below, the admission of this evidence would have likely been inevitable in a severed trial. We are unpersuaded that informing the jury that the trial court had acquitted the defendant of the aggravated robberies because of the rigors of the accomplice corroboration rule – as the defendant argues – would have ameliorated the detriment to the defendant. As the trial court suggested, the judgments of acquittal in this case did not amount to a finding that the defendant had not, in fact, committed the aggravated robberies but only that the evidence was deemed insufficient by virtue of a rule of law.

Second, the trial court imparted a curative instruction. It informed the jury that the disposition of the aggravated robbery charges was of no concern to the jury and should not be the subject of speculation. We presume the jury followed this instruction. *See*, *e.g.*, *State v. Woods*, 806 S.W.2d 205, 211 (Tenn. Crim. App. 1990) (stating that the jury is presumed to follow the instructions given it by the trial court).

Third, we discern that the quality of the evidence against the defendant on the especially aggravated kidnapping charge was not really enhanced by the evidence that he committed the aggravated robberies. Only the kidnapping victim, an accomplice, offered testimony about the aggravated robberies, hence the reason for the trial court's granting of

the defendant's motion for judgments of acquittal on the aggravated robbery charges. The State was not required to prove motive in order to establish the elements of the especially aggravated kidnapping offense. In other words, in our view, the victim's testimony about motive vis-a-vis the aggravated robbery charges added little to the State's case concerning the especially aggravated kidnapping charge, especially given the strength of the State's proof of the especially aggravated kidnapping. The kidnapping victim's testimony about the kidnapping was corroborated by other testimony. "'The more the proof exceeds that which is necessary to support a finding of guilt beyond a reasonable doubt, the less likely it becomes that an error affirmatively affected the outcome of the trial on its merits.'" *See State v. Stevens*, 78 S.W.3d 817, 837 (Tenn. 2002) (quoting *State v. Gilliland*, 22 S.W.3d 266, 274 (Tenn. 2000)). Therefore, we conclude that the defendant was not convicted of especially aggravated kidnapping *because* the jury heard or believed the kidnapping victim's testimony about the defendant's motive – anger over the victim's fleeing the aggravated robberies – but because the proof established that the defendant committed the especially aggravated kidnapping. Thus, the trial court's errors in failing to instruct the jury and in limiting the defendant's argument before the jury about the aggravated robbery charges were harmless beyond a reasonable doubt.

### III. Prosecutor's Argument

Regarding the claim that the trial court erred by allowing the State to argue motive based upon the aggravated robberies, we conclude that the evidence of the defendant's role in the aggravated robberies was admissible evidence even in what emerged as a trial of the singular charge of especially aggravated kidnapping. In reaching that conclusion, we hold that (1) the accomplice corroboration rule is not part and parcel of the other-purposes mechanism of Tennessee Rule of Evidence 404(b) and that, (2) in any event, an acquittal on the prior crime does not preclude the showing of clear and convincing evidence when the acquittal is based upon application of the accomplice corroboration rule. In the circumstance presented in the instant case, the prosecutor's argument about motive was fairly supported in the record.

The State relied upon the evidence of the aggravated robberies to show the defendant's motive for committing the especially aggravated kidnapping. Under certain circumstances, the prosecution may introduce evidence for purposes of establishing an accused's intent, identity, or motive, even though the evidence portrays the accused as the perpetrator of another bad act or crime. *See* Tenn. R. Evid. 404(b) (stating that although "evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity with the character trait," such evidence may be admissible for "other purposes"); *see id.*, Advisory Comm'n Comments (stating that "[i]n the exceptional case where another crime is arguably relevant to an issue other than the accused's

character – issues such as identity (including motive and common scheme or plan), intent, or rebuttal of accident or mistake – the trial judge" embarks upon a determination whether the evidence is admissible to show the other purpose).

We know that to admit evidence of the aggravated robberies in an ultimately severed trial of the especially aggravated kidnapping charge, the trial "court must find proof of the other crime, wrong, or act to be clear and convincing." Tenn. R. Evid. 404(b)(3); *see also State v. Parton*, 694 S.W.2d 299, 303 (Tenn. 1985). In the present case, the acquittal, which in essence constituted a severance of the offenses, did not occur prior to the introduction of the motive evidence in the trial under review. Retrospectively, the motive evidence would have nevertheless been admissible subject to Rule 404(b)'s balancing test – unless the testimony, coming from an accomplice, was *ipso facto* not clear and convincing. We discern no legal basis for declaring that accomplice-only testimony precludes the evidence from being clear and convincing, and so far as we can tell, the accomplice corroboration requirement has been applied only to the attainment of *the conviction under review*. *See State v. Jose Rodriguez and Eladio Caballero Sanchez*, No. M2005-00951-CCA-R3-CD, slip op. at 12 (Tenn. Crim. App., Nashville, Aug. 7, 2006). As we discussed in *Jose Rodriguez and Eladio Caballero Sanchez*, although accomplice testimony alone cannot satisfy the beyond-a-reasonable-doubt-standard required for conviction, it may be sufficient to satisfy the clear-and-convincing standard required for the admission of evidence under 404(b). *See id.* We saw no reason or need in that case to extend the requirement of corroboration to Rule 404(b) evidence of other crimes when adjudicating the quality of that proffered evidence, and we see none now.

Now, the defendant posits that the eventual aggravated robbery acquittals brought into play a rule of exclusion that is used when other-purpose evidence was itself the subject of a *prior* acquittal. To be sure, in Tennessee, when a defendant has been acquitted previously of the other crime, wrong, or act, the clear-and-convincing-evidence requirement of Tennessee Rule of Evidence 404(b)(3) generally would not be met to allow admission of the other act. *State v. Shropshire*, 45 S.W.3d 64, 75-76 (Tenn. Crim. App. 2000) (citing *State v. Holman*, 611 S.W.2d 411, 413 (Tenn. 1981) (holding that Tennessee Rule of Evidence 404(b)(3) "preclude[s] the introduction of evidence of a prior crime when a jury has acquitted the defendant of committing that crime")).

Assuming for purposes of argument that a partial acquittal in a joint trial even has the same effect as a prior acquittal for purposes of applying *Holman*, we are unpersuaded that the evidence of motive should be viewed as improper in the present case. This court has said that, notwithstanding the general rule represented by *Holman*, "[d]ictum in *Holman*, however, suggests that use of the other crime may be permissible if the acquittal was based on something other than insufficient evidence." *Shropshire*, 45 S.W.3d at 75-76 n.7 (citing

*Holman*, 611 S.W.2d at 413)). *Shropshire*, however, left the issue undecided because in that case the acquittal on the prior offense was obviously based upon insufficiency of the evidence.

We understand that the accomplice corroboration requirement may be viewed as a corollary of the reasonable doubt standard of proof in a criminal case and, as such, may be regarded as a measurement of the legal sufficiency of evidence. The requirement was not, however, a component of our common law heritage, *see Scola v. State*, 474 S.W.2d 144, 145-46 (Tenn. Crim. App. 1971); rather, it was adopted in most states by statute, *see id.*, although in Tennessee, the rule appeared via case law, *see Clapp v. State*, 30 S.W. 214 (Tenn. 1895). The accomplice corroboration requirement has functionally served as a safeguard against the "obvious dangers," *see Scola*, 474 S.W.2d at 145, of convicting a defendant of an offense based solely upon the testimony of an accomplice to *that* offense. Under that view of the requirement, inculpatory evidence that otherwise would support a conviction upon due deference to the trier of fact – but fails legally to support a conviction upon application of the accomplice corroboration requirement – could not be said to be insufficient in the traditional sense. Based upon this policy view of the accomplice corroboration requirement, the *Holman* rule is inapt when the elements of the other crime are established by a witness whom the trier of fact accredits and whose only demerit lies in his or her status as an accomplice. *Cf. Jose Rodriguez and Eladio Caballero Sanchez*, slip op. at 12. Accordingly, we conclude that, even if *Holman* otherwise applies in this contemporaneous acquittal situation, it does not preclude the use of the testimony that established motive in the present case.

In sum, under any of the above formulations of how the motive evidence in the present case fits within our polity, the evidence was available to the State, was admitted, and accordingly provided support in the record for the State's argument to the jury about motive. Moreover, we discern no basis for holding that the prosecutor's argument violated principles of double jeopardy or collateral estoppel. Consequently, the defendant garners no relief from the issues outlined above.[2]

---

[2]The *Holman* rule as discussed also appears to be at odds with Tennessee sentencing law. In applying the preponderance of the evidence standard, a sentencing court may find that a defendant committed a prior criminal act even though he had been acquitted of that act under the reasonable doubt standard. *State v. Winfield*, 23 S.W.3d 279, 284 (Tenn. 2000) ("The trial court heard the testimony and viewed the witnesses and is in a superior position to an appellate court to make such findings in a case where there is conflicting evidence regarding the existence of an enhancement factor."); *see State v. Desirey*, 909 S.W.2d 20, 31 (Tenn. Crim. App. 1995) (stating that "[a]n acquittal is normally not considered for evidentiary purposes to equate with factual innocence, only with the existence of a reasonable doubt. As such, an acquittal is not viewed to negate the possibility that criminal involvement may be shown to have existed by a preponderance of the evidence"). Moreover, the dissent in *Holman*, as noted in *Shropshire*, revealed that the supreme court adopted a minority position. *Shropshire*, 45 S.W.3d at 76 n.8; *see Dowling v. United States*, 493 U.S. 342 (Continued...)

-12-

*IV. Instruction on Criminal Responsibility for the Conduct of Another*

Despite the defendant's objection, the trial court instructed the jury on the law of criminal responsibility as set forth in Tennessee Code Annotated section 39-11-402. The defendant claims that the trial court erred in so instructing the jury. He posits that, although other persons were present in the house during the victim's captivity, no evidence showed that the defendant was an accomplice to the especially aggravated kidnapping. The State points to the defendant's claim that he was present during the kidnapping but did not commit the offense.

As noted above, although a trial court is obliged "to give a complete charge of the law applicable to the facts of the case," *Harris*, 839 S.W.2d at 73, jury instructions are erroneous only if, when read as a whole, they fail to fairly submit the legal issues or mislead the jury as to the applicable law, *see State v. Vann*, 976 S.W.2d 93, 101 (Tenn. 1998).

Tennessee Code Annotated section 39-11-402 provides:

A person is criminally responsible for an offense committed by the conduct of another, if:

(1) Acting with the culpability required for the offense, the person causes or aids an innocent or irresponsible person to engage in conduct prohibited by the definition of the offense;

(2) Acting with intent to promote or assist the commission of the offense, or to benefit in the proceeds or results of the offense, the person solicits, directs, aids, or attempts to aid another person to commit the offense; or

(3) Having a duty imposed by law or voluntarily undertaken to prevent commission of the offense and acting with intent to benefit in the proceeds or results of the offense, or to promote or assist its commission, the person fails to make a reasonable effort to prevent commission of the offense.

---

[2](...continued)

(1990).

Tenn. Code Ann. § 39-11-402. "A charge of criminal responsibility is appropriate if it is fairly raised by the evidence." *State v. Gene Shelton Rucker, Jr.*, No. E2002-02101-CCA-R3-CD, slip op. at 6 (Tenn. Crim. App., Knoxville, Dec. 9, 2004).

In the present case, some evidence pointed to the "Buchanan brothers" as active participants in the kidnapping. We conclude, therefore, that the evidence fairly raised the issue of the defendant's complicity. As we noted in *Gene Shelton Rucker, Jr.*, we need not be

> convinced that the jury was required to take an all-or-nothing
> approach to the charged offenses. It is the jury's province, as
> the trier of fact, to determine which parts of the testimony and
> evidence to credit, and there is no requirement that a jury must
> wholly accept or reject a witness's account of events.

*Gene Shelton Rucker, Jr.*, slip op. at 6. Accordingly, we hold that the trial court committed no error in instructing the jury as to the law of criminal responsibility.

In any event, any error in this respect was harmless. Considering the record as a whole, any such error did not affect the judgment or result in prejudice to the judicial process. *See* Tenn. R. App. P. 36(b). Based upon the strong evidence of the especially aggravated kidnapping, the jury was free to convict the defendant on a theory of primary responsibility, a theory of complicity, or a combination of both. *See State v. Lemacks*, 996 S.W.2d 166 (Tenn. 1999).

## V. Cumulative Error

In his final issue, the defendant summarily claims that he is entitled to a new trial based upon a combination of the errors he has assigned. Although we allow that with respect to some issues error was committed, we have determined that any errors were harmless. Harmless error determinations were made, in part, based upon the strength of the State's case. In a similar vein, we discern no basis for reversal upon considering an accumulation of any such errors.

## VI. Conclusion

Having deemed any error harmless, we affirm the defendant's conviction of especially aggravated kidnapping.

_____
JAMES CURWOOD WITT, JR., JUDGE