# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT KNOXVILLE
### September 28, 1999 Session

## STATE OF TENNESSEE v. JAMES DAVID SHROPSHIRE

**Appeal as of Right from the Criminal Court for Knox County**
**No. 51598      Richard Baumgartner, Judge**

---

**No. E1998-00872-CCA-R3-CD**
**December 12, 2000**

---

In March 1996, James David Shropshire, the defendant and appellant, was convicted in the Knox County Criminal Court of aggravated sexual battery and simple assault. Following the jury's verdict, the trial court dismissed the simple assault charge. On appeal, the defendant challenges his conviction for aggravated sexual battery. He raises the following issues: (1) whether the evidence was sufficient to support the conviction; (2) whether a variance between the bill of particulars and the proof adduced at trial was fatal; (3) whether the defendant's conviction violated the double jeopardy clauses of the United States and Tennessee Constitutions; (4) whether the state made improper closing arguments; and (5) whether the trial court erred in allowing the state to introduce evidence that the defendant had committed prior bad acts. Because the jury heard evidence that the defendant committed a crime other than that for which he was on trial, which was the subject of an acquittal, the judgment of the trial court is reversed.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court is Reversed and Remanded.**

JERRY L. SMITH, J., delivered the opinion of the court, in which GARY R. WADE, P.J. and JAMES CURWOOD WITT, JR., J., joined.

Kenneth F. Irvine, Jr., Knoxville, Tennessee, for the appellant, James David Shropshire.

Paul G. Summers, Attorney General and Reporter, Erik W. Daab, Assistant Attorney General, Randall E. Nichols, District Attorney General, and Charme Knight, Assistant District Attorney, for the appellee, State of Tennessee.

**OPINION**

**Factual Background**

During autumn, 1991, A.L.,[1] a seven-year-old female, was living with her grandmother, Glenda Shropshire, and Ms. Shropshire's husband, the defendant. Ms. Shropshire often worked at night, and the defendant worked during the day. Consequently, the defendant was often home with A.L. at night. After A.L. overheard Ms. Shropshire and Ms. Shropshire's daughter (A.L.'s mother) discussing child molestation in July 1992, A.L. told her mother and grandmother that the defendant had molested her back in 1991.

Ms. Shropshire took A.L. to a hospital to have her examined. The hospital referred A.L. to the Department of Human Services. DHS, in turn, referred A.L. to Dr. Campbell, a child abuse specialist. Dr. Campbell examined A.L. in September 1992 and determined that A.L. had some sort of trauma to her genital area that was consistent with the allegations A.L. had made about the defendant.

On May 5, 1993, the Knox County Grand Jury indicted the defendant for one count of rape of a child and two counts of aggravated sexual battery.[2] During the trial on September 20, 1995, A.L. testified that the defendant molested her on several occasions. First, she testified that she watched the movie "Peter Pan" with the defendant. During the movie, the defendant picked her up and pretended that A.L. was flying around the room. As he was holding her, the defendant touched A.L.'s vagina. She then testified that, on another occasion, the defendant was alone with her in his bedroom and placed his finger in her vagina. She also testified that he did that again on a separate occasion. Finally, A.L. recounted two episodes in which the defendant forced her to touch his penis, and one incident during which the defendant showed her a "white, or clear" substance on his finger. After A.L. finished testifying, the state called Dr. Campbell, the child abuse expert who examined A.L. Dr. Campbell testified that her examination of A.L. yielded results consistent with the charges. The state then rested.

The defense called Ms. Shropshire as its first witness. She testified that she did not believe the defendant molested A.L. Following Ms. Shropshire's testimony, the defendant testified. He stated that, during the time period in question, A.L. had exhibited inappropriate behavior toward him, i.e., she tried to see him in the shower and tried to "rub herself" on his foot. He also testified that A.L. had once awakened him from a nap by trying to touch his genitals. After the defendant's testimony, the defense rested. Following the proof, the state elected one of the incidents in which the defendant allegedly placed his finger in A.L.'s vagina as count one (aggravated rape), the Peter Pan incident as count two (aggravated sexual battery), and one of the incidents in which the defendant allegedly forced A.L. to touch his penis as count three (aggravated sexual battery). The

---

[1] It is the policy of this Court not to reveal the names of minor victims of sexual abuse.

[2] Although the defendant was indicted for a violation of Tenn. Code Ann. § 39-13-522 (rape of a child), that statute was not codified until 1992 because funding was not appropriated. See Tenn. Code Ann, § 39-13-522, Code Commission Notes (1991). Because the defendant was indicted for acts that he allegedly performed in late 1991, the offense for which the defendant was indicted did not exist at that time.

jury acquitted the defendant on count two but was unable to reach a verdict on counts one and three. The judge then declared a mistrial on those counts.

The defendant was retried for one count of aggravated sexual battery and one count of aggravated rape in March 1996. The proof in the second trial was almost exactly the same as that presented in the first trial, except that in the second trial the defendant did not testify. Just as in the first trial, the state elected one incident in which the defendant placed his finger in A.L.'s vagina as the aggravated rape and one of the incidents in which the defendant forced A.L. to touch his penis as the aggravated sexual battery. The jury convicted the defendant of aggravated sexual battery, and of simple assault, a lesser included offense of aggravated rape. Following the Court of Criminal Appeals's decision in State v. Roger Dale Hill, Sr., 01C01-9508-CC-00267, 1996 WL 346941(Tenn. Crim. App., Nashville, June 20, 1996), however, the trial court dismissed the charges against the defendant.[3] The Tennessee Supreme Court reversed the Hill decision in State v. Hill, 954 S.W.2d 725 (Tenn. 1997), and, consequently, the Court of Criminal Appeals reinstated the defendant's convictions. Following a motion by the defendant, the trial judge dismissed the simple assault conviction because it had been charged after the statute of limitations had expired. The defendant then moved the trial court to dismiss the aggravated sexual battery conviction, but the trial court declined.

## Sufficiency

The appellant first contends that the evidence at trial was legally insufficient to convict him of aggravated sexual battery. In Tennessee, great weight is given to the result reached by the jury in a criminal trial. A jury verdict of guilt accredits the state's witnesses and resolves all conflicts in favor of the state. State v. Bigbee, 885 S.W.2d 797, 803 (Tenn. 1994); State v. Harris, 839 S.W.2d 54, 75 (Tenn. 1992). Therefore, on appeal from a verdict of guilt, the state is entitled to the strongest legitimate view of the evidence and all reasonable inferences which may be drawn therefrom. State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978). Moreover, a guilty verdict removes the presumption of innocence which the appellant enjoyed at trial and raises a presumption of guilt on appeal. State v. Grace, 493 S.W.2d 474, 476 (Tenn. 1973). The appellant has the burden of overcoming this presumption of guilt. Id.

Where a defendant challenges the sufficiency of the evidence on appeal, the relevant question for the reviewing Court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Tenn. R. App. P. 13(e); Jackson v. Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789, 61 L. Ed. 2d 56 (1979); State v. Abrams, 935 S.W.2d 399, 401 (Tenn. 1996).

In this case, the defendant was convicted of aggravated sexual battery. At the time of his conviction, Tenn. Code Ann. § 39-13-504 (1991) provided:

> (a) Aggravated sexual battery is unlawful sexual contact with a victim by the defendant or the defendant by a victim accompanied by any of the circumstances listed in § 39-13-502(a).

---

[3] In that case the Court of Criminal Appeals held that failure to allege a culpable mental state in an indictment was fatal.

One of the circumstances listed in Tenn. Code Ann. § 39-13-502(a) was that: (4) the victim was less than thirteen (13) years of age.[4]

In this case, the victim testified that she was under thirteen (13) years old at the time of the incident in question, and that the defendant forced her to touch his penis. This constitutes unlawful sexual contact with a victim under thirteen (13) years of age. Thus the evidence was sufficient to convict the defendant of aggravated sexual battery. This issue is without merit.

## Bill of Particulars

The defendant also claims that the evidence was insufficient because the proof at trial varied from the incidents alleged in the bill of particulars. Specifically, the defendant claims the proof varied from the bill of particulars because (1) the bill of particulars alleged that the defendant caused the victim to touch his penis with her mouth, but the victim testified at trial that the defendant caused the victim to touch his penis with her hand, and (2) the proof did not establish that the incidents happened within the time period alleged in the bill of particulars. Because we find that any variances were neither material nor prejudicial, we disagree.

In this case, the bill of particulars stated

> [t]hat the defendant . . . did on the _____ day of September, 1991, and on divers and diverse dates between that day and the _____ day of November, 1991, sexually penetrate [A.L.] by placing his finger in [her] vagina. The defendant also had sexual contact with [A.L] by touching her vagina with both his penis and his mouth. The defendant also caused [A.L.] to have contact with him by causing [her] to touch his penis with her mouth. . . .

The purpose of the bill of particulars is to provide the accused with sufficient information about the offense alleged in the indictment to permit the accused (a) to prepare a defense, (b) to avoid prejudicial surprise at trial, and (c) to enable the accused to preserve a plea of double jeopardy. State v. Byrd, 820 S.W.2d 739, 741 (Tenn. 1991) ; State v. Campbell, 904 S.W.2d 608, 611 (Tenn. Crim. App. 1995). Those purposes were adequately served in this case.

A variance between an indictment or a subsequent bill of particulars and the evidence presented at trial is not fatal unless it is both material and prejudicial. State v. Moss, 662 S.W.2d 590, 592 (Tenn. 1984); State v. Ealey, 959 S.W.2d 605, 609 (Tenn. Crim. App. 1997). The variance is not to be regarded as material when the indictment and proof substantially correspond. State v. Mayes, 854 S.W.2d 638, 640 (Tenn. 1993) (citations omitted). A material variance occurs only if the prosecutor has attempted to rely upon theories and evidence at the trial that were not fairly embraced in the allegations made in the charging instrument. Id.; Ealey, 959 S.W.2d at 609. In this case, although the bill of particulars charged that the defendant had forced the victim to touch his

---

[4]A 1992 amendment to Tenn Code Ann. § 39-13-502 deleted the subsection that prohibited sexual penetration of a victim less than thirteen (13) years of age and created a new Class A felony charge of rape of a child. This Court held, in State v. Case, 884 S.W.2d 146 (Tenn. Crim. App. 1994), however, that aggravated sexual battery was still a crime under Tenn. Code Ann. § 39-13-504 if it involved a victim under thirteen (13) years of age, even though the subsection had been deleted. In 1993, the legislature codified this decision in a new version of section 504. See Tenn. Code Ann. § 39-13-504 (1997).

penis with her mouth, the victim testified that the defendant forced her to touch his penis with her hand. The allegations contained in the bill of particulars substantially corresponded with this proof. Furthermore, the defendant was not subject to unfair surprise, because the victim had given the same testimony in the first trial. Therefore, this slight variance was not material.

The defendant also claims that the victim was unable to consistently testify as to when the offense took place. In Byrd, the Tennessee Supreme Court recognized that in most child sex abuse cases the state is unable to offer the specific date when an alleged offense occurred. 820 S.W.2d at 741. When the timing of the incident is not an essential element of the charges, an accused's conviction may be affirmed if it appears the defense of the accused was not hampered by the lack of specificity of the charging instrument. Id. at 742. In this case, the victim testified that the incidents in question occurred in 1991. Although the time frame in the bill of particulars was somewhat narrower than that alleged by the victim, the defendant was not hampered by the victim's failure to testify as to the month in which the incidents occurred. The defendant had ample notice of the victim's testimony, because the victim's testimony in the second trial was virtually identical to her testimony in the first trial. Furthermore, the defendant did not present an alibi defense for the dates set forth in the bill of particulars, nor has he offered any indication that he might have presented one were it not for the dates in the bill of particulars. In short, the defendant has failed to show how any variance between the bill of particulars and the proof at trial prejudiced his defense. This issue is without merit.

## Double Jeopardy

The appellant also claims that the state violated his double jeopardy rights in the second trial. He argues that because the jury acquitted him of aggravated sexual battery (count two in the original trial), the acquittal foreclosed any opportunity the state may have had to subsequently charge him with a similar crime during the time period listed in count two of the presentment. Because count three of the presentment charged the defendant with aggravated sexual battery (the same statutory crime as count two in the original trial) during the time period listed in count two of the presentment, the defendant argues that this is a violation of his right to be protected against double jeopardy. While the appellant bases his argument on a line of cases beginning with State v. Byrd, we do not agree that the principles announced in Byrd and its progeny change the fundamental meaning of double jeopardy. "Such a rule would create an insuperable obstacle to the administration of justice in many cases in which there is no semblance of the type of oppressive practices at which the double-jeopardy prohibition is aimed." Wade v. Hunter, 336 U.S. 684, 688-689, 69 S. Ct. 834, 836-837, 93 L. Ed. 974 (1949).

The double jeopardy prohibition, which protects defendants from "twice being placed in jeopardy for the same offense," protects against (1) a second prosecution for the same offense following acquittal, (2) a second prosecution for the same offense after conviction, and (3) multiple punishments for the same offense.[5] North Carolina v. Pearce, 395 U.S. 711, 89 S. Ct. 2072, 23 L. Ed. 2d 656 (1969). It is the first protection that is at issue here.

---

[5]U.S. Const. Amend V; Tenn. Const. art. I, § 10.

In Byrd, the trial court dismissed a multi-count presentment when the state was unable to significantly narrow a broad time-frame alleged in that instrument. Upholding this Court's reversal of the trial court, the Tennessee Supreme Court opined, in dictum, that the broad time-frame alleged in the presentment did not violate the defendant's double jeopardy rights because "the state would obviously be stopped from initiating subsequent prosecutions for any similar offenses against the same victims occurring within the same time period." Byrd, 820 S.W.2d at 741 (citations omitted).

The Supreme Court echoed that dictum in State v. Shelton, 851 S.W.2d 134, 137 (Tenn. 1993). In that case, the Court reversed the defendant's conviction for aggravated sexual battery because although the state had presented evidence of multiple acts that could constitute aggravated sexual battery, the trial judge had neglected to force the state to elect an act upon which to rely. The Court explained that the election requirement normally serves to (1) allow a defendant to adequately prepare for trial, (2) protect the defendant from double jeopardy, and (3) protect the defendant's right to a unanimous jury verdict. Shelton, 851 S.W.2d at 137 (citing Burlison v. State, 501 S.W.2d 801, 803 (Tenn. 1973)). The Court then opined that the "second concern [of the Burlison Court] is largely moot [in this case], because an accused is protected from double jeopardy for the type of offense or offenses charged during the entire time period covered in the indictment." Shelton, 851 S.W.2d at 137 (citing State v. Hardin, 691 S.W.2d 578, 580-81 (Tenn. Crim. App. 1985)).

This case is distinguishable from Byrd and Shelton because here the original charge ended in a mistrial. It is well-settled that the protection of the Double Jeopardy Clause by its terms applies only if there has been some event, such as an acquittal or a conviction, that terminates the original jeopardy: "[W]ithout exception, the courts have held that the trial judge may discharge a genuinely deadlocked jury and require the defendant to submit to a second trial. This rule accords recognition to society's interest in giving the prosecution one *complete* opportunity to convict those who have violated its laws." Arizona v. Washington, 434 U.S. 497, 509, 98 S. Ct. 824, 832, 54 L. Ed. 2d 717 (1978) (emphasis added). Thus, neither the failure of a jury to reach a verdict nor a trial court's declaration of a mistrial following a hung jury is an event that terminates the original jeopardy. Id.; Richardson v. United States, 468 U.S. 317, 323-24, 104 S. Ct. 3081, 3085, 82 L. Ed. 2d 242, 250 (1984); State v. Mounce, 859 S.W.2d 319, 322 (Tenn. 1993). In this case, the jury in the first trial failed to reach a verdict as to counts one and three. Thus, original jeopardy never terminated on either of those counts until the jury's verdict in the second trial.

This issue is without merit.


**Closing Argument**

Next, the defendant contends that the state's closing arguments were improper, because the prosecutor argued facts not properly in evidence. After a thorough review of the trial record, we disagree. Technically, this issue is waived due to counsel's failure to impose contemporaneous objections. T.R.A.P. 36(a); State v. Seay, 945 S.W.2d 755, 762 (Tenn. Crim. App. 1996). In addition the defendant's argument fails on the merits.

"Trial courts have substantial discretionary authority in determining the propriety of final argument. Although counsel is generally given wide latitude, courts must restrict any improper commentary." Coker v. State, 911 S.W.2d 357, 368 (Tenn. Crim. App. 1995) (citing Sparks v. State, 563 S.W.2d 564 (Tenn. Crim. App. 1978)). The broad discretion accorded to trial courts in controlling the argument of counsel "will not be reviewed absent abuse of that discretion." Smith

v. State, 527 S.W.2d 737, 739 (Tenn. 1975); see also State v. Payton, 782 S.W.2d 490, 496 (Tenn. Crim. App. 1989). The bounds of proper closing argument are delineated by the facts in evidence. State v. Pulliam, 950 S.W.2d 360, 368 (Tenn. Crim. App. 1996). Conversely, facts not in evidence may not be the subject of comment by counsel during closing argument. State v. Mackey, 638 S.W.2d 830, 836 (Tenn. Crim. App. 1982).

The defendant first complains that the prosecutor mischaracterized the pediatrician's testimony during closing argument. We disagree. During direct examination, Dr. Campbell was specifically asked "[W]ould these findings be consistent with a finger being placed in the child's vagina?" She replied, "[Y]es, any object actually if it just made trauma or damage to that area that would heal like that." Dr. Campbell further testified that "[the findings] would be extremely unusual for accidental injury." In his closing argument, the prosecutor stated "[Dr. Campbell] told you that that penetration that she saw is exactly consistent with what happened. She said this is exactly what she would expect to find if a finger were placed inside her vagina." Dr. Campbell's testimony indicated that the injury was consistent with digital penetration; thus, the prosecutor's remark was not a mischaracterization.

The defendant also complains that the victim was allowed to testify that she saw "white stuff on the finger" of the defendant, and that the prosecutor mentioned this in his closing argument. As will be discussed below, this testimony was relevant not only to show the relationship between the victim and the defendant, but to refute the defense's contention that the victim initiated contact. Because it was properly admitted as evidence, referring to it in a closing argument was not error.

Next, the defendant complains that after describing each act which was elected, the prosecutor stated that each specific act occurred more than once. Specifically, the prosecutor stated that "[the victim] told you that [the defendant] put his finger inside her vagina. She also told you that that happened more than one time." The prosecutor also stated "[the victim] told you how he made her move her hand up and down on [the defendant's] penis. And she told you that that happened more than one time." During trial, the victim specifically testified that the defendant placed his finger in her vagina twice, and that he forced her to touch his penis twice. The state's argument was properly based upon evidence that had been presented to the jury.

The defendant also complains that the prosecutor referred to other evidence outside the record in his closing argument. Specifically, the prosecutor stated "[the victim] told Tammy Judd with the Department of Human Services[:] She said 'he abused me.' What did she tell the next person, Nancy Jackson Eldridge? The same story, 'this man sexually abused me.'" Again, we disagree with the defendant. During cross examination of the victim, the defense attorney asked the victim whether she remembered telling Nancy Jackson Eldridge that the sexual abuse occurred during 1991, and the victim responded affirmatively. Furthermore, During the state's redirect examination of the victim, the victim testified that Tammy Judd came to her house and took a statement regarding the sexual abuse. Finally, during the defendant's closing argument, defense counsel stated "[a] month later [A.L.] talked to [Tammy Judd], a police officer. She tells the story [about the sexual abuse] again." Thus, the prosecutor's closing argument was proper. This issue is without merit.

**Prior Bad Acts**

Finally, the defendant claims that the trial court erred in admitting evidence that the defendant had committed sexual crimes other than the ones corresponding to the counts listed in the presentment. Specifically, the defendant complains that the prosecutor should not have been able to elicit testimony (1) that the defendant gave A.L. "more bad touches" than those elected, (2) that the defendant tried to force A.L. to eat "a whitish, clearish" substance on the defendant's finger, and (2) that the defendant touched A.L.'s vagina while the two watched Peter Pan.

In Tennessee, evidence that the defendant has committed other crimes is governed by Rule of Evidence 404(b). The rule states: "[E]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity with the character trait. It may, however, be admissible for other purposes." Tenn. R. Evid. 404(b). The rule establishes procedures which the trial court must use in deciding whether evidence should be admitted or excluded.[6] Only in an exceptional case will another crime, wrong, or bad act be relevant to an issue other than the accused's character. State v. Luellen, 867 S.W.2d 736, 740 (Tenn. Crim. App. 1992). Such exceptional cases include identity, intent, motive, opportunity, or rebuttal of mistake or accident. Id. In this case, the defendant did not object to the introduction of prior acts; thus, technically, this issue is waived. T.R.A.P. 36(a). We find, however, that testimony regarding the "other bad touches" and the substance on the defendant's finger was admissible to show the relationship between the defendant and the victim, the opportunity the defendant had to commit the crimes, and to rebut the defense's assertion that the victim and the defendant were never alone together. Furthermore, the victim testified that these events occurred when she was in the first grade, before Christmas. The presentment listed the applicable time period as September and November 1991. although Tennessee does not have a "sex-crimes" exception to the general prohibition against character evidence, we are satisfied that the incidents occurred within the time period covered in the presentment, and are thus admissible pursuant to State v. Rickman, 876 S.W.2d 824 (Tenn. 1994).

Admission of the Peter Pan incident, however, was prejudicial to the defendant for other reasons. A prerequisite to admitting evidence under Rule 404(b) is that the trial court find by clear and convincing evidence that the defendant committed the prior crime. Tenn. R. Evid. 404 (Advisory Commission Comments); State v. DuBose, 953 S.W.2d 649, 654 (Tenn. 1997); State v. Parton, 694 S.W.2d 299, 303 (Tenn. 1985). The Tennessee Supreme Court has construed the requirement that the trial court find that the defendant committed the crime by clear and convincing evidence to preclude the introduction of evidence of a prior crime when a jury has acquitted the defendant of committing that crime. In State v. Holman, the defendant was charged with theft of a wrist watch. 611 S.W.2d 411 (Tenn. 1981). Over the defendant's objection, the trial court allowed the state to introduce evidence that the defendant had previously stolen another wrist watch in the

---

[6] The rule mandates, however, that certain conditions must be satisfied before the evidence may be admitted. The conditions which must be satisfied before allowing such evidence are: (1) The court upon request must hold a hearing outside the jury's presence; (2) the court must determine that a material issue exists other than conduct conforming with a character trait and must upon request state on the record the material issue, the ruling, and the reasons for admitting the evidence; and (3) the court must exclude the evidence if its probative value is outweighed by the danger of unfair prejudice. In this case, the defendant did not request a jury out hearing.

same manner he had stolen the watch at issue.  The trial court also denied the defendant the opportunity to prove that he had been acquitted for the previous crime.  The Tennessee Supreme Court reversed the conviction, reasoning that

> the effect of any acquittal is to render less than "clear and convincing" the proffered evidence that the defendant committed the prior crime . . . .  For such evidence to have any relevance or use in the case on trial, the jury would have to infer that, despite the acquittal, the defendant nevertheless was guilty of the prior crime.  No such inference can properly be drawn from an acquittal . . . .[7]

Holman, 611 S.W.2d at 413.  Thus, the Supreme Court announced that evidence of a crime for which the defendant was acquitted can never be admissible as evidence of a prior crime in a trial, despite its relevance on issues other than propensity.[8]

In this case, the state introduced evidence during the second trial that the defendant touched the victim's vagina while watching Peter Pan, even though the defendant had been acquitted of a charge made in connection with that behavior in the first trial.  This incident would only have been relevant if the defendant had intentionally touched the victim's vagina.  As noted above, however, an acquittal precludes the possibility of an inference that the defendant committed the crime.  Furthermore, the jury in the first trial was unable to reach a verdict on the charge under review here.  Thus, given that the evidence at the second trial was almost identical to the first and the possible prejudicial effect of introducing evidence of a crime for which the defendant was acquitted, we are unable to conclude that exclusion of the Peter Pan incident would not have affected the result in the second trial.

---

[7] Dictum in Holman, however, suggests that use of the other crime may be permissible if the acquittal was based on something other than insufficient evidence.  Holman, 611 S.W.2d at 413.  In this case, the acquittal could only have been based on insufficient evidence.  There was no question that the victim was under thirteen (13) years of age at the time; thus, the jury must have concluded that the state failed to prove an "unlawful sexual contact." Tenn. Code Ann. § 39-13-504.

[8] The dissent in Holman notes that, by adopting this rule, the Tennessee Supreme Court adopts a minority view.  Holman, 611 S.W.2d at 413 (Fones, J., dissenting)(citing 86 A.L.R.2d 1132).  Moreover, the view that an act which has been the subject of acquittal may never be introduced as a prior crime in sentencing has been rejected in sentencing proceedings, because "[a]n acquittal is normally not considered for evidentiary purposes to equate with factual innocence, only with the existence of a reasonable doubt.  As such, an acquittal is not viewed to negate the possibility that criminal involvement may be shown to have existed by a preponderance of the evidence." State v. Desirey, 909 S.W.2d 20, 31 (Tenn. Crim. App) perm. to appeal denied (Tenn. 1995).  Finally, because prior crimes must be proven by clear and convincing evidence and guilty verdicts are based on proof beyond a reasonable doubt, the United States Supreme Court declined to automatically exclude such evidence on the basis of collateral estoppel.  Dowling v. United States, 493 U.S. 342, 110 S.Ct. 668, 107 L.Ed.2d 708 (1990).  Nevertheless, the Holman decision remains the law in Tennessee.

Accordingly, the judgment of the trial court is reversed and remanded for a new trial on the charge of aggravated sexual battery.

_____

JERRY L. SMITH, JUDGE