# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
### Assigned on Briefs January 7, 2014

## STATE OF TENNESSEE v. LORENZO SPENCER

**Appeal from the Criminal Court for Shelby County**
**No. 10-06096     W. Otis Higgs, Jr., Judge**

---

**No. W2013-00657-CCA-R3-CD - Filed April 29, 2014**

---

Following a jury trial, the Defendant, Lorenzo Spencer, was convicted of aggravated burglary. See Tenn. Code. Ann. § 34-14-403. The trial court sentenced the Defendant as a Range III, persistent offender to a ten-year sentence. On appeal, the Defendant contends that the evidence presented at trial was insufficient to support his conviction. Following our review, we affirm the judgment of the Shelby County Criminal Court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

D. KELLY THOMAS, JR., J., delivered the opinion of the court, in which ALLAN E. GLENN and ROGER A. PAGE, JJ., joined.

Stephen C. Bush, District Public Defender; Phyllis L. Aluko (on appeal) and William Otis Yonkowski (at trial), Assistant Public Defenders, for the appellant, Lorenzo Spencer.

Robert E. Cooper, Jr, Attorney General and Reporter; Michelle L. Consiglio-Young, Assistant Attorney General; Amy P. Weirich, District Attorney General; and Christopher Judson Lareau, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION
### FACTUAL BACKGROUND

On April 10, 2010, Judy Westpy noticed a man she had never seen before walking in her neighborhood. Ms. Westpy described the man as a black male, about 5'7" or 5'8" in height, and wearing a light colored baseball cap. When she saw the man walk in between two houses, she called her neighbor, Daniel Bass, and then the police. Mr. Bass drove to the area, but he did not see the man. Mr. Bass then pulled into his driveway to wait for the man

to reappear. When he heard glass breaking from the house next door, Mr. Bass exited his truck and walked up the driveway. At that time, Mr. Bass heard a car on the street and turned from the house towards the street where he saw a police cruiser approaching. As Mr. Bass began to walk toward the street to meet the police officer, he saw the Defendant come out of the front door and also walk toward the police officer. Later, Mr. Bass told the police that the house in question was a rental property but that he did not know whether the property was currently being rented. Nevertheless, Mr. Bass stated to police that "this guy doesn't belong here."

Officer Adam Lewis of the Memphis Police Department testified that he responded to a burglary call on the morning of April 10, 2010. He arrived at the scene while Ms. Westpy was still on the phone with the dispatcher. Officer Lewis saw the Defendant come out of the front door of the house Mr. Bass was standing in front of and throw two gloves on the ground. Officer Lewis detained the Defendant and conducted a pat down, finding a "newer house key" as well as a piece of aluminum that resembled part of a golf club. When Officer Lewis's partner arrived, Officer Lewis walked around the house where he saw a rear window with its glass broken out. Officer Lewis then entered the house and saw a piece of concrete on the floor near the window, as well as a broken golf club that was missing its middle shaft. Officer Lewis confirmed that the house key found on the Defendant fit the lock on the front door of the house.

Eddie Albonetti testified that he was the owner of the house and that he arrived at the property to talk with police officers after receiving telephone calls from his neighbors about a break-in. Mr. Albonetti testified that he used the house as a rental property and that at the time of the burglary he did not have the house rented. Because the house was not occupied at the time, it was mostly empty with only a few items stored in the enclosed front porch area of the house. He stated that he kept a spare key to the house on a shelf in the kitchen. Mr. Albonetti further testified that he believed the Defendant had thrown a brick through the back window in order to gain entry to the house. Mr. Albonetti did not know the Defendant, nor did he give the Defendant permission to enter the house.

ANALYSIS

The Defendant contends that the evidence presented at trial was insufficient to support his conviction for aggravated burglary. In particular, the Defendant argues that the indictment charged him with an aggravated burglary that occurred on April 20, 2010, but that all the evidence presented at trial referred to an incident that took place on April 10, 2010. The Defendant also argues that the State failed to present sufficient evidence of his identity as the perpetrator and that the State failed to prove his intent to commit theft. The State

-2-

responds that any variance between the indictment and the proof at trial was neither material nor prejudicial because the Defendant was sufficiently advised of the crime for which he was charged. The State further responds that the evidence supports the jury's finding that the Defendant was guilty of aggravated burglary.

## *I. Indictment*

At the outset, we note that the majority of the Defendant's sufficiency argument addresses his belief that there was a fatal variance between the indictment and the evidence presented at trial. "A variance between an indictment . . . and the evidence presented at trial is not fatal unless it is both material and prejudicial." State v. Shropshire, 45 S.W.3d 64, 71 (Tenn. Crim. App. 2000) (citing State v. Moss, 662 S.W.2d 590, 592 (Tenn. 1984); State v. Ealey, 959 S.W.2d 605, 609 (Tenn. Crim. App. 1997)). Any variance between an indictment and the proof presented at trial "is not material where the allegations and proof substantially correspond, the variance is not of a character which could have misled the defendant at trial" and that does not "deprive the accused of his right to be protected against another prosecution for the same offense." Moss, 662 S.W.2d at 592.

"Unless a defendant can show that he has suffered a substantial deprivation of his rights, he is not prejudiced. If the indictment sufficiently informs him of the charges against him and will protect him from future prosecutions for the same offense, any variances are harmless." State v. West, 737 S.W.2d 790, 793 (Tenn. Crim. App. 1987) (citing State v. Hardin, 691 S.W.2d 578 (Tenn. Crim. App. 1985)). Furthermore, "[t]he time at which the offense was committed need not be stated in the indictment . . . unless the time is a material ingredient in the offense." Tenn. Code Ann. § 40-13-207; see also State v. Byrd, 820 S.W.2d 739, 740 (Tenn. 1991).

In State v. Moutry, No. E2011-02531-CCA-R3-CD, 2013 WL 3105616, at *1 (Tenn. Crim. App. June 17, 2013), this court held that a variance between the date of the offense and the date listed in the indictment was not material. In Moutry, the indictment charged the defendant with committing an offense "[o]n or about the 13th day of March." Id. However, the offense was actually committed on March 4. Id. At trial, the defendant did not raise an alibi defense, and all the evidence presented referred to an incident that took place on March 4. Id. at *2. On appeal, this court held that the variance was not material because the indictment sufficiently informed the defendant of the charges against him so that he could adequately prepare his defense, and the variance did not "present a danger that the defendant [would] be prosecuted a second time for the same offense." Id. at *8. We find Moutry to be analogous to Defendant's case.

The Defendant first contends that the variance is material because multiple burglaries

could have occurred at the same residence at various times. However, there was no proof presented at trial that the residence was burglarized on more than one occasion or by anyone other than the Defendant. Therefore, there is no risk that the Defendant might later be charged a second time for the same offense. See id. There is also nothing in the record to suggest that the Defendant was foreclosed from using an alibi defense, or any other relevant defense, because of the inconsistency between the indictment and the proof presented at trial. The Defendant knew the date of his arrest, April 10, 2010, and knew he was accused of burglarizing the house on that same date. The Defendant has therefore failed to prove that his defense was prejudiced at trial. See id. Finally, there is nothing in the record to suggest that the jury was confused about the date of the offense. Although the indictment did list the incorrect date, the testimony offered at trial consistently referred to an aggravated burglary that took place on April 10, 2010. The information contained in the indictment was otherwise sufficient to provide the Defendant with notice of the charges against him. We therefore conclude that this issue is without merit.

## II. Sufficiency of the Evidence

With respect to the Defendant's remaining arguments, an appellate court's standard of review when the defendant questions the sufficiency of the evidence on appeal is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979). This court does not reweigh the evidence; rather, it presumes that the jury has resolved all conflicts in the testimony and drawn all reasonable inferences form the evidence in favor of the state. See State v. Sheffield, 676 S.W.2d 542, 547 (Tenn. 1984); State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978). Questions regarding witness credibility, conflicts in testimony, and the weight and value to be given to evidence were resolved by the jury. See State v. Bland, 958 S.W.2d 651, 659 (Tenn. 1997).

A guilty verdict "removes the presumption of innocence and replaces it with a presumption of guilt, and [on appeal] the defendant has the burden of illustrating why the evidence is insufficient to support the jury's verdict. Bland, 958 S.W.2d at 659; State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982). A guilty verdict "may not be based solely upon conjecture, guess, speculation, or a mere possibility. State v. Cooper, 736 S.W.2d 125, 129 (Tenn. Crim. App. 1987). However, "[t]here is no requirement that the State's proof be uncontroverted or perfect. State v. Williams, 657 S.W.2d 405, 410 (Tenn. 1983). Put another way, the State is not burdened with "an affirmative duty to rule out every hypothesis except that of guilt beyond a reasonable doubt." State v. Dorantes, 331 S.W.3d 370, 380 (Tenn. 2011) (quoting Jackson, 443 U.S. at 326).

Furthermore, "[t]he credible testimony of one identification witness is sufficient to support a conviction if the witness viewed the accused under such circumstances as would permit a positive identification to be made." State v. Radley, 29 S.W.3d 532, 537 (Tenn. Crim. App. 1999) (citing State v. Strickland, 885 S.W.2d 85, 87-88 (Tenn. Crim. App. 1993)). "It is well-established that the identification of a defendant as the person who committed the offense for which he is on trial is a question of fact for the determination of the jury upon consideration of all competent proof." Strickland, 885 S.W.2d at 87 (citing State v. Crawford, 635 S.W.2d 704, 705 (Tenn. Crim. App. 1982)).

The record belies the Defendant's contention that the State failed to prove his identity as the perpetrator. Three eyewitnesses positively identified the Defendant at trial. Ms. Westpy testified that the Defendant was the man she saw walking around her neighborhood on April 10, 2010. Officer Lewis testified that he actually saw the Defendant walk out of the front door of the house upon arrival at the scene. Similarly, Mr. Bass testified that he saw the Defendant as he emerged from the residence. These accounts provide ample evidence from which the jury could conclude that the Defendant was the perpetrator. The argument is without merit.

The Defendant next argues that the State presented insufficient evidence of his intent to commit theft. In the context of reviewing an aggravated burglary conviction, "[o]ne's actions are circumstantial evidence of his intent." State v. Barker, 642 S.W.2d 735, 737 (Tenn. Crim. App. 1982). "The circumstances surrounding the entry must also be viewed in determining intent." State v. Holland, 860 S.W.2d 53, 59 (Tenn. Crim. App. 1993). "When one enters, without authorization, an occupied dwelling which contains valuable property, a jury is entitled to infer that the entry was made with the intent to commit a felony." State v. Burkley, 804 S.W.2d 458, 460 (Tenn. Crim. App. 1990) (citing Hall v. State, 490 S.W.2d 495, 496 (Tenn. 1973)).

The Defendant argues that if he had intended to commit theft, he would have broken into one of the many occupied houses on the street rather than the one house that was unoccupied. However, Mr. Albonetti testified that the curtains were drawn on the windows in the house. Therefore, the Defendant likely did not know that the house was unoccupied and that there was no substantial property inside the house when he broke into it. The Defendant walked to the rear of the house where he gained entry by throwing a brick through a window. Furthermore, the Defendant actually removed property from the house. The Defendant was found with the key to the front door of the house as well as part of a golf club. Mr. Albonetti testified that the Defendant did not have permission to enter the house or take those items. Taken together, these circumstances could lead a reasonable jury to conclude that the Defendant entered the residence with the intent to commit theft.

## CONCLUSION

In consideration of the foregoing and the record as a whole, the judgment of the trial court is affirmed.

_____
D. KELLY THOMAS, JR., JUDGE