IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON

Assigned on Briefs February 4, 2020

**STATE OF TENNESSEE v. JOSEPH JASON QUALLS**

**Appeal from the Circuit Court for McNairy County**
**No. 4020      J. Weber McCraw, Judge**

_____

**No. W2019-01083-CCA-R3-CD**

_____

A McNairy County jury convicted the Defendant-Appellant, Joseph Jason Qualls, of aggravated sexual battery and three counts of violating the sex offender registry, for which he received an effective sentence of twenty years' imprisonment. On appeal, the sole issue presented for our review is whether the evidence is sufficient to support his conviction of aggravated sexual battery. Upon review, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3, Appeal as of Right; Judgment of the Circuit Court Affirmed**

CAMILLE R. MCMULLEN, J., delivered the opinion of the court, in which JOHN EVERETT WILLIAMS, P.J., and ALAN E. GLENN, J., joined.

Matthew C. Edwards (on appeal), Bolivar Tennessee, and Rickey Griggs (at trial), Assistant Public Defender, for the Defendant-Appellant, Joseph Jason Qualls.

Herbert H. Slatery III, Attorney General and Reporter; Samantha L. Simpson, Assistant Attorney General; Mark E. Davidson, District Attorney General; and Lisa Miller, Assistant District Attorney General, for the Appellee, State of Tennessee.

**OPINION**

The victim testified that the Defendant, her mother's long-time boyfriend, raped her at some point in November or December of 2016, when she was twelve years old. The victim recalled the offense occurred when she began to attend Selmer Middle School and had learned the moon phase song from her science class. On the day of the offense, the victim got in trouble for not making sure her younger brother cleaned some ketchup off the wall. The Defendant called her into his room and hit her four times with a wooden paddle with a taped handle. The Defendant then grabbed the victim by the arms, pinned her down on the floor, and put his penis inside her vagina. The victim said it felt like she "was being torn apart." She recalled wearing a peach dress with white lace, and the Defendant wearing

a black t-shirt with a cross and skulls on it with a white tank-top shirt underneath. Her younger brother was on the other side of the house, listening to his iPod with headphones. After the offense, the Defendant wiped the "white stuff" off her leg with his t-shirt and put it in the laundry, and the victim took a shower. When the victim finished her shower, the Defendant gave her a black iPhone 5s and promised not to touch her again. The victim did not immediately tell her mother about the offense because she was afraid the Defendant would beat her, and that her mother would believe the Defendant instead of her. When the victim eventually told her mother about the offense, her mother did not believe her. The victim then told two best friends and a teacher about the offense. Shortly thereafter, the victim began living with her aunt and uncle. The victim agreed she was disciplined if she broke any rules at their home, but she denied having a cell phone or fabricating the offense to get out of her mother's house.

On cross-examination, the victim admitted that she had initially told staff at the child advocacy center that the assault took place in 2017, but that it was a mistake. She said she was nervous and scared which caused her to misspeak about the date of the offense. The victim was certain the offense took place in 2016 because it was her first year at Selmer Middle School. A law enforcement officer testified and confirmed that the victim initially reported that the offense took place in 2017, but that she later corrected herself.

The medical director for the Madison County Child Advocacy Center, an expert in child maltreatment and pediatrics, examined and treated the victim following the allegations of child sexual abuse. The victim reported that in December of 2016, her "mother's boyfriend, Joseph Qualls, did stuff to me three different times." The victim said that she was called into the Defendant's bedroom and hit four times with a paddle because of an incident involving ketchup earlier that day. The Defendant then made her lift her dress, and he penetrated her vagina. The victim remembered there was some blood and that the Defendant got a "bunch of wet stuff" on her legs and vagina, which he wiped off with his black shirt. After the offense, her family had meatloaf for dinner, the Defendant gave the victim an iPhone 5s, and he promised that he would not assault her again. The victim reported further that the Defendant routinely tried to isolate her from her mother and intimidate her, which the expert described as classic signs of domestic abuse. The physical examination of the victim did not reveal any signs of acute or residual trauma, which was consistent with the victim's age and the fact that the offense occurred almost two years prior to the exam.

The victim's mother testified on behalf of the defense. She recalled from her work records that she was not at work on November 15, 2016. She also acknowledged entering a guilty plea to leaving her children at home with the Defendant, a registered sex offender, in relation to the facts of this case. The victim's younger brother also testified and recalled that on the day of the alleged offense, the victim had gotten in trouble for putting dirty

dishes in the sink, not because of the ketchup stain. He did not see the victim go into the bedroom with the Defendant, and he denied listening to music or wearing headphones while doing chores that day. He testified that the victim told her mother about the offense the day after it happened, but the victim laughed about it and did not seem upset.

Although the Defendant was indicted for rape of a child in count one, he was convicted by the jury of the lesser included offense of aggravated sexual battery and received a sentence of twenty years' imprisonment.[1] He was also convicted of violating the sex offender registry as charged in counts three, four, and five, and received a concurrent five-year term of imprisonment. In count six, the Defendant was found not guilty of perjury on a Tennessee Sexual Offender and Violent Sexual Offender Registration/Verification Form as prohibited by Tennessee Code Annotated section 39-16-702(b)(3). Following the denial of his motion for a new trial on June 3, 2019, the Defendant filed a timely notice of appeal on June 18, 2019.

## ANALYSIS

In this appeal, the Defendant challenges the sufficiency of the evidence supporting his conviction of aggravated sexual battery. The Defendant specifically argues the offense did not happen because the victim was inconsistent about the year the offense occurred and there were no eyewitnesses or physical evidence to corroborate the victim's claims. The Defendant relies heavily on the testimony of the victim's younger brother, who testified in contrast to the victim that he was not allowed to wear headphones while doing chores and that the Defendant never called the children into his room alone. The victim's younger brother also testified that the victim told her mother about the offense the next day, not nearly two years later. The Defendant argues that a reasonable jury could not have accredited the victim's testimony given these inconsistencies. The State contends, and we agree, that the evidence was sufficient to support the Defendant's conviction of aggravated sexual battery.

We apply the following well established framework to challenges to the sufficiency of the evidence in support of a conviction. "Because a verdict of guilt removes the presumption of innocence and raises a presumption of guilt, the criminal defendant bears the burden on appeal of showing that the evidence was legally insufficient to sustain a guilty verdict." State v. Hanson, 279 S.W.3d 265, 275 (Tenn. 2009) (citing State v. Evans, 838 S.W.2d 185, 191 (Tenn. 1992)). "Appellate courts evaluating the sufficiency of the convicting evidence must determine 'whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" State v. Wagner, 382 S.W.3d 289, 297

---

[1] Prior to trial, the State entered a nolle prosequi to aggravated sexual battery in count two.

(Tenn. 2012) (quoting Jackson v. Virginia, 443 U.S. 307, 319 (1979)); see Tenn. R. App. P. 13(e). When this Court evaluates the sufficiency of the evidence on appeal, the State is entitled to the strongest legitimate view of the evidence and all reasonable inferences that may be drawn from that evidence. State v. Davis, 354 S.W.3d 718, 729 (Tenn. 2011) (citing State v. Majors, 318 S.W.3d 850, 857 (Tenn. 2010)).

Guilt may be found beyond a reasonable doubt where there is direct evidence, circumstantial evidence, or a combination of the two. State v. Sutton, 166 S.W.3d 686, 691 (Tenn. 2005); State v. Hall, 976 S.W.2d 121, 140 (Tenn. 1998). The standard of review for sufficiency of the evidence "'is the same whether the conviction is based upon direct or circumstantial evidence.'" State v. Dorantes, 331 S.W.3d 370, 379 (Tenn. 2011) (quoting State v. Hanson, 279 S.W.3d 265, 275 (Tenn. 2009)). The jury as the trier of fact must evaluate the credibility of the witnesses, determine the weight given to witnesses' testimony, and reconcile all conflicts in the evidence. State v. Campbell, 245 S.W.3d 331, 335 (Tenn. 2008) (citing Byrge v. State, 575 S.W.2d 292, 295 (Tenn. Crim. App. 1978)). Moreover, the jury determines the weight to be given to circumstantial evidence, and the inferences to be drawn from this evidence, and the extent to which the circumstances are consistent with guilt and inconsistent with innocence, are questions primarily for the jury. Dorantes, 331 S.W.3d at 379 (citing State v. Rice, 184 S.W.3d 646, 662 (Tenn. 2006)). When considering the sufficiency of the evidence, this court "neither re-weighs the evidence nor substitutes its inferences for those drawn by the jury." Wagner, 382 S.W.3d at 297 (citing State v. Bland, 958 S.W.2d 651, 659 (Tenn. 1997)). Our supreme court has determined that the testimony of a child victim, alone, is sufficient to uphold a conviction for child rape. State v. Elkins, 102 S.W.3d 578, 582-83 (Tenn. 2003); see State v. Warren Curnutt, No. M2006-00552-CCA-R3-CD, 2007 WL 1482390, at *11 (Tenn. Crim. App. May 22, 2007).

The Defendant was convicted of aggravated sexual battery. As charged in this case, the State was required to prove the "unlawful sexual contact with a victim by the defendant ... [where] [t]he victim is less than thirteen (13) years of age." T.C.A. § 39-13-504(a)(4) (1993). "Sexual contact" is statutorily defined to include:

the intentional touching of the victim's, the defendant's, or any other person's intimate parts, or the intentional touching of the clothing covering the immediate area of the victim's, the defendant's, or any other person's intimate parts, if that intentional touching can be reasonably construed as being for the purpose of sexual arousal or gratification[.]

Id. § 39-13-501(6). "'Intimate parts' includes the primary genital area, groin, inner thigh, buttock or breast of a human being[.]" Id. § 39-13-501(2). "'Intentional' means that a person acts intentionally with respect to the nature of the conduct or to a result of the conduct when it is the person's conscious objective or desire to engage in the conduct or cause the result [.]" Id. § 39-11-106(a)(18).

The evidence presented at trial, viewed in the light most favorable to the State, was sufficient for a rational trier of fact to find the Defendant guilty beyond a reasonable doubt of aggravated sexual battery. Although the victim's brother testified that the Defendant did not call the victim into the bedroom and close the door, the victim testified in stark contrast that the Defendant ordered her into the bedroom, paddled her, pinned her to the floor, and penetrated her vagina. The proof established that the victim reported the same version of events to the child abuse authorities. This court has repeatedly held that the testimony of a minor victim, alone, is sufficient to uphold a conviction of sexual offenses. See State v. Elkins, 102 S.W.3d 578, 582-83 (Tenn. 2003) (quoting State v. Radley, 29 S.W.3d 532, 537 (Tenn. Crim. App. 1999)); see also State v. Jordan, No. W2018-01190-CCA-R3-CD, 2019 WL 3071889, at *5 (Tenn. Crim. App. July 12, 2019), appeal denied (Oct. 14, 2019); State v. Adam Davis, No. M2017-00293-CCA-R3-CD, 2018 WL 1468819, at *8 (Tenn. Crim. App. Mar. 26, 2018); State v. Christopher Lee Blunkall, No. M2014-00084-CCA-R3-CD, 2015 WL 500751, at *10 (Tenn. Crim. App. Feb. 5, 2015) (holding that a minor victim's testimony was sufficient despite lack of corroborating evidence, including the defendant's semen); State v. Shropshire, 45 S.W.3d 64, 70 (Tenn. Crim. App. 2000) (affirming a conviction for aggravated sexual battery where "the victim testified that she was under thirteen (13) years old at the time of the incident in question, and that the defendant forced her to touch his penis"); State v. James Paul Kinard, No. M2008-02840-CCA-R3-CD, 2010 WL 2160347, at *5 (Tenn. Crim. App. May 28, 2010). Here, as in Elkins and the many cases that have followed, the jury chose to accredit the testimony of the victim over the testimony by the defense witness and resolved any inconsistencies in the State's favor. Because a rational jury could have found the essential elements of aggravated sexual battery beyond a reasonable doubt, the Defendant is not entitled to relief.

We take this opportunity to observe that on March 26, 2020, the Defendant, acting pro se, filed a motion for status of case. To the extent that the motion is outstanding, this opinion serves as this court's response. Accordingly, the motion is hereby dismissed.

## CONCLUSION

For the reasons above, the judgment of the trial court is affirmed.

_____
CAMILLE R. MCMULLEN, JUDGE