IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs May 3, 2022

**STATE OF TENNESSEE v. WILLIE HOOPER, SR.**

**Appeal from the Criminal Court for Shelby County**
**No. C1809236      Glenn Ivy Wright, Judge**

_____

**No. W2021-01069-CCA-R3-CD**

_____

Willie Hooper, Sr., Defendant, was convicted of one count of rape of a child and one count of aggravated sexual battery after a jury trial. He was sentenced to an effective sentence of twenty-five years at 100% for the convictions. After the denial of a motion for new trial, Defendant appeals, challenging the sufficiency of the evidence to support his convictions. After a review, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed**

TIMOTHY L. EASTER, J., delivered the opinion of the court, in which JAMES CURWOOD WITT, JR., and CAMILLE R. MCMULLEN, JJ., joined.

Phyllis Aluko, District Public Defender; Constance Barnes (at trial) and Tony N. Brayton (on appeal), Assistant Public Defenders, for the appellant, Willie Hooper, Sr.

Herbert H. Slatery III, Attorney General and Reporter; Samantha Simpson, Assistant Attorney General; Amy P. Weirich, District Attorney General; and Leslie Rainey, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

In October of 2018, the Shelby County Grand Jury indicted Defendant for one count of rape of a child of the victim C.J., one count of aggravated sexual battery of the victim C.J., and one count of the aggravated sexual battery of C.W.[1] The State dismissed the count pertaining to C.W. prior to trial.

_____

[1] It is the policy of this Court to refer to minor victims of sexual offenses by their initials in order to protect their identity.

At trial, C.J. was 19 years old. She testified that she grew up in Memphis. C.J. had a brother and a sister, and the children lived with their mother, T.W., and their grandmother. C.J. recalled moving around frequently as a child. They lived on their own, with their grandmother, and with people that her mother knew. T.W. was killed by a gunshot wound in June of 2016, when C.J. was 14 years old. After her mother died, C.J. lived with her grandmothers.

C.J. explained that she "grew up" around Defendant, who she called "Uncle" even though they were not related by blood. Defendant was friends with T.W., and C.J. remembered that she and her siblings and mother lived with Defendant on two separate occasions in two different locations. The first time, C.J., her sister, and T.W. lived with Defendant when she was between 10 and 12 years old. They lived in "some apartments in South Memphis" for less than a year. C.J. remembered that her sister's "god-dad" Travis also stayed with them in the apartment.

C.J. explained that "one day" during this year, her mother went to a friend's house. While her mother was gone, Defendant asked C.J. and her sister to "set him up a Facebook page." After they helped him set up a Facebook page, Defendant showed her sister "animal porn" involving a "horse and a woman" on his cell phone. Her sister claimed that Defendant was "disrespectful" for showing them pornography and left the room. C.J. told Defendant it was "nasty" and that she did not want to see anything like that. Defendant touched C.J.'s "thigh" and "private area" over her clothes on this occasion. She remembered "scooting over" but did not recall saying anything to Defendant.

After the incident, C.J. found her sister, put on her shoes, and left the apartment. She did not tell anyone about Defendant's actions, thinking they were an "accident." C.J. also said that it was not an accident because Defendant "was paying attention."

The next time they lived with Defendant was at a house near Overton Crossing and Frayser. Defendant's son and Travis also stayed at the house occasionally. C.J. did not have her own bedroom at the house. Sometimes she slept in the same room with Defendant, her mom, and her sister. Sometimes C.J. and her sister slept in another bedroom "up front."

When C.J. was between the ages of 11 and 12, around Christmas, C.J. and her sister watched a movie at the house. Defendant was not in the room at that time. C.J. "got up to go in [Defendant's] room to get something out of [her] bucket." She recalled that she was going to get a notebook.

Her mother was at the store. When C.J. "bent over to get something out [of] the storage bin . . . [Defendant] came in the room and he locked the latch." Defendant was "rubbing his self" and "licking his lips." C.J. tried to leave the room but Defendant "pushed

[her] on the bed and pulled down [her] pants . . . and stuck his fingers inside of [her]." C.J. "started screaming and asked him to stop." Defendant "stuck his penis inside [her] vagina."

C.J. explained that it hurt and that there was blood "[o]n the bed and on [Defendant's] finger. The entire episode lasted "around three to five minutes." Eventually, C.J. was able to get up and leave the room.

C.J. remembered that this happened around Christmas because her mother and grandmother had gotten into a "big argument and . . . took all [their] Christmas gifts." She did not tell anyone "right after it happened" because she "really felt embarrassed" and "was really scared" that Defendant "might snap and try to hurt [her]." She started living with her grandmother after the incident.

C.J. eventually told her aunt and her aunt called the police. According to C.J., about two months after the incident, she tried to kill herself by taking pills, hanging herself, and cutting herself. She told the counselors at an inpatient facility about the abuse. Her mother was still alive at the time.

Once police started investigating, C.J. interviewed with a child advocate at the Child Advocacy Center. Officer Henry Hearns of the Memphis Police Department investigated the offenses. He confirmed that the victim's aunt made the initial complaint. Officer Hearns attempted to reach T.W., but she did not return his calls. He later learned that T.W. was deceased. Officer Hearns noted that C.J. was actually admitted to Lakeside Behavioral Health center in March of 2016.

Defendant testified at trial. He claimed that he did not rape or sexually assault C.J. but acknowledged that he lived in an apartment in 2014 with T.W., C.J., C.J.'s sister, "Travis Smalling," and his son, Willie Hooper, Jr.[2] Defendant testified that he was never left alone with either C.J. or her sister at the apartment. Defendant confirmed that after moving out of the apartment, he lived in a house in Frayser with his son, Travis Sprawling, T.W., T.W.'s boyfriend, C.J. and her sister.

Mr. Sprawling identified himself as Defendant's cousin. He testified that he lived with Defendant in two separate locations, in Frayser and "on Laclede." He remembered that Defendant's son, T.W., C.J., C.J.'s sister, and another man lived at this residence. Mr. Sprawling confirmed that Defendant was never alone with the children at this residence. At the house in Frayser, Mr. Sprawling recalled that Defendant's son, T.W., and T.W.'s daughters lived at the house. Mr. Sprawling did not recall Defendant's being alone with the children at the house in Frayser but acknowledged that he left the house for work.

---

[2] We presume Defendant was referring to Travis Sprawling, who testified for the defense at trial.

Defendant's son testified similarly to Defendant and Mr. Sprawling. He testified that Defendant was in relationship with T.W., then claimed that he himself was in a relationship with T.W.

At the conclusion of the proof, the State elected to prosecute Defendant for "putting his penis in the victim's vagina" in count one, rape of a child. In count two, aggravated sexual battery, the State relied on Defendant's displaying pornography to C.J. and "touch[ing] her vagina with his hand over her clothes."

The jury found Defendant guilty of both counts. The trial court sentenced Defendant to 25 years in incarceration at 100% for the rape conviction and eight years at 100% for the aggravated sexual battery conviction, to be served concurrently.

After the denial of a motion for new trial, Defendant appealed.

*Analysis*

On appeal Defendant challenges the sufficiency of the evidence. Specifically, Defendant argues that the "scant proof consist[ed] solely of the testimony of a nineteen-year-old woman" testifying about an incident "that allegedly occurred some seven (7) years prior to trial" and that there was no "other proof [at trial] which would support or be consistent with the alleged victim's testimony." Defendant acknowledges that his conviction could be based on the testimony of a single witness. The State argues that "it was the jury's prerogative to credit" the victim's testimony and this Court should affirm the convictions.

When a defendant challenges the sufficiency of the evidence, this Court is obliged to review that claim according to certain well-settled principles. The relevant question the reviewing court must answer is whether any rational trier of fact could have found the accused guilty of every element of the offense beyond a reasonable doubt. *See* Tenn. R. App. P. 13(e); *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). The jury's verdict replaces the presumption of innocence with one of guilt; therefore, the burden is shifted onto the defendant to show that the evidence introduced at trial was insufficient to support such a verdict. *State v. Reid*, 91 S.W.3d 247, 277 (Tenn. 2002). The prosecution is entitled to the "strongest legitimate view of the evidence and to all reasonable and legitimate inferences that may be drawn therefrom." *State v. Goodwin*, 143 S.W.3d 771, 775 (Tenn. 2004) (quoting *State v. Smith*, 24 S.W.3d 274, 279 (Tenn. 2000)). It is not the role of this Court to reweigh or reevaluate the evidence, nor to substitute our own inferences for those drawn from the evidence by the trier of fact. *Reid*, 91 S.W.3d at 277. Questions concerning the "credibility of the witnesses, the weight to be given their testimony, and the reconciliation

- 4 -

of conflicts in the proof are matters entrusted to the jury as the trier of fact." *State v. Wagner*, 382 S.W.3d 289, 297 (Tenn. 2012) (quoting *State v. Campbell*, 245 S.W.3d 331, 335 (Tenn. 2008)). "A guilty verdict by the jury, approved by the trial court, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the prosecution's theory." *Reid*, 91 S.W.3d at 277 (quoting *State v. Bland*, 958 S.W.2d 651, 659 (Tenn. 1997)). The standard of review is the same whether the conviction is based upon direct evidence, circumstantial evidence, or a combination of the two. *State v. Dorantes*, 331 S.W.3d 370, 379 (Tenn. 2011); *State v. Hanson*, 279 S.W.3d 265, 275 (Tenn. 2009).

Defendant was charged with rape of a child and aggravated sexual battery. "Rape of a child is the unlawful sexual penetration of a victim by the defendant . . . if the victim is more than three (3) years of age but less than thirteen (13) years of age." T.C.A. § 39-13-522(a). "Sexual penetration" is defined as "sexual intercourse, cunnilingus, fellatio, anal intercourse, or any other intrusion, however slight, of any part of a person's body or of any object into the genital or anal openings of the victim's the defendant's, or any other person's body, but emission of semen is not required." T.C.A. § 39-13-501(7). In order to establish the offense of aggravated sexual battery, the State had to prove that there was unlawful sexual contact between Defendant and the victim, who was less than 13 years of age. T.C.A. § 39-13-504(a)(4). "Sexual contact" means the intentional touching of anyone's intimate parts—or the clothing covering those parts—if the touching can be "reasonably construed as being for the purpose of sexual arousal or gratification." T.C.A. § 39-13-501(6). The "primary genital area" is considered an "intimate part." T.C.A. § 39-13-501(2).

Here, to support the conviction for rape of a child, the victim testified that she lived with Defendant in an apartment when she was 12. Her mother and sister lived in this same apartment, along with a few other people. On one occasion, near Christmas, Defendant came into a room where she was retrieving a notebook. Defendant "latched" the door, and started "rubbing" his penis outside his clothes and "licking his lips." When the victim tried to leave, Defendant pushed her onto the bed and pulled down her pants. Defendant penetrated her vagina with his fingers and penis. The victim told her aunt, and the abuse was eventually reported to the police.

To support the conviction for aggravated sexual battery, the victim testified about the time she and her mother and sister lived with Defendant in an apartment. On this occasion, Defendant's mother left the apartment to go to a friend's house. While she was gone, Defendant asked C.J. and her sister to make him a Facebook page. After they helped Defendant, he showed them "animal porn" on his phone, touched her thigh and "private area" outside her clothing.

The victim's testimony alone is sufficient to support Defendant's convictions. *See State v. Elkins*, 102 S.W.3d 578, 582-83 (Tenn. 2003) (stating that a child victim's testimony regarding sexual contact can be sufficient to support a conviction); *State v. Shropshire*, 45 S.W.3d 64, 70 (Tenn. 2000) (holding that the evidence was sufficient for a conviction of aggravated sexual battery where the victim testified that she was under 13 years old and the defendant forced her to touch his penis). Even though Defendant's testimony conflicted with the testimony of the victim, we do not entertain questions concerning the credibility of a witness because those are matters entrusted to the jury. *Wagner*, 382 S.W.3d at 297. Therefore, Defendant is not entitled to relief.

*Conclusion*

For the foregoing reasons, the judgments of the trial court are affirmed.

_____
TIMOTHY L. EASTER, JUDGE