# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### Assigned on Briefs May 13, 2014

## STATE OF TENNESSEE v. WENDELL TODD DUBERRY

### Appeal from the Circuit Court for Maury County
### No. 21117    Stella Hargrove, Judge

### No. M2013-02121-CCA-R3-CD - Filed June 9, 2014

Appellant, Wendell Todd Duberry, was convicted of theft of property valued at $1,000 or more but less than $10,000 and criminal trespassing. The trial court sentenced him as a multiple offender to eight years for the theft conviction and to thirty days for the criminal trespassing conviction. On appeal, appellant contends that (1) the trial court erred by allowing the State to present evidence of victims not named in the indictment; (2) the evidence was insufficient to support his convictions; (3) his sentence was excessive; and (4) the trial court erred in its instructions to the jury. Following our review, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court Affirmed**

ROGER A. PAGE, J., delivered the opinion of the court, in which JAMES CURWOOD WITT, JR., and JOHN EVERETT WILLIAMS, JJ., joined.

Claudia S. Jack, District Public Defender; and Robert C. Richardson, Jr., Assistant District Public Defender, Columbia, Tennessee, for the appellant, Wendell Todd Duberry.

Robert E. Cooper, Jr., Attorney General and Reporter; David H. Findley, Senior Counsel; T. Michel Bottoms, District Attorney General; and Brent Cooper, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

**I. Facts**

**A. Trial**

This case concerns the theft of five loads of timber cut from Dr. Steven Bass's property in Maury County. The State indicted appellant for theft of property valued at $1,000 or more but less than $10,000 and criminal trespassing. The case proceeded to trial on April 15, 2013.

The victim, Dr. Bass, testified that he and his family (his wife and two sons) owned 403 acres in Maury County. Dr. Bass bought the land for "[r]ecreation and preservation" and placed it in a land trust. He described the acreage as "woodland," and he said that his family had improved the trails and constructed a corral but had not made any other improvements to the land. He had the land surveyed when he purchased it, and the State introduced the original survey into evidence. Dr. Bass used the survey to show the jury the boundaries of his land and the ridge road. He also showed the jury where the "areas of deforestation occurred." Dr. Bass testified that to secure his property, a metal cable was placed across the ridge road and that a locked metal gate was placed farther down the road. There were also "no trespassing" and land conservation signs in the area. Dr. Bass said that he never gave consent for appellant to be on his property and that appellant never asked permission to go on his property. He further testified that he never gave Eugene Carroll,[1] the logger, permission to be on his land. Dr. Bass stated that a friend visiting his land told him that trees had been cut down. When he went to the property to investigate, he discovered that the cable crossing the road "had been sawed through" and that the lock was missing from the gate. He also noticed that new "no trespassing" signs had been placed in the area where the timber had been cut. Dr. Bass identified photographs of the areas where the timber had been clear-cut. He testified that he managed the property but that his sons and wife also had an ownership interest in the property.

On cross-examination, Dr. Bass said that three to four acres of his property were damaged. He estimated that the distance from the first damaged area to his boundary line was 150 yards and that the distance from the second damaged area to his boundary line was 250 yards.

---

[1] We note that the transcript incorrectly spells Mr. Carroll's name as "Carol."

Andy Bass and Brian Bass, Dr. Bass's sons, testified that they owned a percentage of the property in question but were unsure of the exact amount. They further testified that they never gave appellant permission to cut timber on the property.

Franklin "Eugene" Carroll testified that appellant asked him to cut timber on his land. He showed Mr. Carroll where to cut, and they signed a contract. The contract was admitted into evidence. When Mr. Carroll took a load of timber to a sawmill, he gave half of the dollar amount he received to appellant in cash. Receipts from two sawmills, annotated by Mr. Carroll, were submitted into evidence. Mr. Carroll testified that he gave appellant $490.80; $660.32; "$647 and something"; and $376.40. Mr. Carroll said that when appellant showed him where to cut, the cable across the road was open and so was the gate. Appellant told him that "ribbons down . . . at the end of the road [were] not legit[imate]." Mr. Carroll testified that appellant was at the site every day and rode along on a skidder. On cross-examination, Mr. Carroll agreed that appellant told him the ridge road was the Old Waynesboro Highway.

Tommy Shaffer testified that he knew both appellant and Dr. Bass and that his property adjoined Dr. Bass's. He said that appellant's mother asked him to cut timber on her property approximately four years before the trial. When Mr. Shaffer explored the possibility, he realized that he would only be able to remove the timber from her property by using the ridge road on Dr. Bass's property. He talked to Dr. Bass about that possibility, and Dr. Bass gave him a survey of his land. Using the survey, Mr. Shaffer marked the boundary between Dr. Bass's property and the Duberry property. According to Mr. Shaffer, Dr. Bass decided that he did not want Mr. Shaffer to "pull all this wood across" his property. After appellant's mother passed away, appellant talked to Mr. Shaffer about logging the property. Mr. Shaffer told appellant what he had previously told appellant's mother: that it was not possible to remove timber from appellant's property without crossing Dr. Bass's property. Mr. Shaffer testified that he told appellant that appellant's property did not reach the ridge road and that "if [he] cut anywhere on that road or close to the road, [he would have] cut across the line." He said that he told appellant this information prior to the timber cutting at issue in this case.

On cross-examination, Mr. Shaffer said that he "just went in there and brightened the line" between the Duberry property and the Bass property, explaining that the survey pins were still in place.

Douglas Ronman, a staff forester for the Land Trust for Tennessee testified that 2.8 acres of Dr. Bass's property had been clear-cut. He estimated that "the larger trees on the property [were] probably [seventy-five] years of age." Mr. Ronman opined that it would take

ninety to one hundred years "to reestablish the forest that was there." Following Mr. Ronman's testimony, the State rested its case.

On behalf of appellant, Maury County Sheriff's Department Detective Sergeant Jerry Williams testified that through his investigation, he determined that appellant was responsible for taking the timber from Dr. Bass's property. He agreed that he did not know the specific date that the timber was cut nor could he show the "actual timber that was taken off that area." Detective Williams further agreed that he did not have any "forensic proof" that appellant had been at the cutting site or was responsible for cutting the cable or lock. He did not find evidence that appellant had deposited "a significant amount of money" into his accounts. He said that the "actual sale of the timber" was done by Mr. Carroll, not appellant.

On cross-examination, Detective Williams testified that a fifth load of timber was also taken but that there was not a receipt for that load. He learned that the fifth load was worth approximately $2,000.

Appellant testified that he inherited seventy-five acres from his parents. His mother's estate had not yet been probated, however. Appellant said that he had a seventh-grade education but could not read or write other than to sign his name. He testified that he knew the boundary lines of his property because his father had shown him. He and his father cut firewood on their property, and they would use the Old Waynesboro Highway to access the area where they cut wood. He said that there were no markings to distinguish his property from Dr. Bass's land. Appellant testified that he asked Mr. Carroll to cut the timber on his entire seventy-five acres. He further testified that he was not able to read the contract that he signed. He showed Mr. Carroll where to cut, saying that he told Mr. Carroll both "[ten] feet off of that highway" and "[fifty], [seventy-five], [one hundred] yards off of it." He said that he did not want to cut timber on someone else's property. Appellant testified that he checked on Mr. Carroll at the cutting site two or three times but that he did not actually cut, haul, or sell any timber himself.

On cross-examination, appellant testified that Mr. Shaffer was wrong about the property lines but that he told Mr. Carroll to cut 150 to 200 yards away from the road so that they would not be on someone else's property. He agreed that Mr. Shaffer told him, while his mother was still alive, that he could not cut timber on the Duberry property "without going over on [Dr. Bass's] property." He said that the land survey of Dr. Bass's property was incorrect. He also said that he asked Mr. Shaffer to go back to the logging site to see whether appellant had been mistaken but that Mr. Shaffer refused to go. Appellant said that he told Mr. Shaffer that if he had been wrong, it was "'an honest mistake.'" He agreed that the timber on his own land had been estimated to be worth $250,000. When asked whether he

was trespassing on Dr. Bass's land when he went through the cable and gate across the road, he said, "Well, I may be trespassing." Appellant testified that he did not intentionally cut someone else's timber and that he did not believe he actually cut timber on Dr. Bass's property. Appellant denied cutting the cable across the road or the chain on the gate. Appellant said that his father told him that their property line was ten feet away from the road.

Following closing argument and deliberations, the jury found appellant guilty of theft of property valued at more than $1,000 but less than $10,000 and criminal trespassing.

## B. Sentencing Hearing

The trial court held a sentencing hearing on July 1, 2013. Christie Dickey with the Board of Probation and Parole testified that she prepared appellant's presentence report. In preparing the report, she met with appellant. She gave appellant an opportunity to make a statement, and he said, "'I feel like I have been railroaded. There was no proof that I was on him [sic]. And if I was, I would give him the stuff back.'" Ms. Dickey wrote the statement for appellant, and he signed his name to it. Ms. Dickey testified that appellant had four prior felony convictions and numerous misdemeanor convictions. Appellant had been placed on probation in the past and had his probation revoked once. He was on probation when he committed the instant offense. Ms. Dickey said that appellant drew disability benefits but was unable to tell her whether his disability was physical or mental. He told her that he had abused alcohol in the past but had not consumed alcohol "in over [fourteen] years." He had used marijuana but did not feel like he had a drug problem. However, he had convictions for simple possession of a Schedule II substance, simple possession of marijuana, and possession of drug paraphernalia.

Dr. Bass testified that he was "outrage[d]" by the timber theft because "[y]ou can't restore these trees." He further testified that he was concerned that appellant "still thinks that property is his property."

Appellant testified that he was trying to "mak[e] it right" with Dr. Bass, and to that end, he said that he was getting the Duberry property probated so that he could sell it to Dr. Bass. He further testified that Mr. Carroll should have had the property surveyed; however, appellant also said that he was taking responsibility for the offense. Appellant stated that he would be successful on probation and would make restitution. He agreed that he would stay away from the Bass property. Regarding his actions in accessing Dr. Bass's land, appellant maintained that he did not cut the cable across the road, but he admitted that he cut the lock off the gate. He further maintained that the road was a public road and should not have had

a gate on it. Appellant said that he did not sell the trees but that he received $2,500 for them. He also said that "[i]f some of [Dr. Bass's] logs got cut, it was an honest accident."

The trial court found that the following enhancement factors applied: (1) appellant had a previous history of criminal convictions or behavior in addition to those necessary to establish the range; (3) the offense involved more than one victim; (8) appellant had failed to comply with a sentence involving release into the community; (13)(C) appellant was on probation when the instant offense was committed; and (24) the theft of property caused significant damage to other property belonging to the victim. *See* Tenn. Code Ann. §§ 40-35-114(1), (3), (8), (13)(C), (24). The trial court further found one mitigating factor to apply: appellant's conduct did not cause or threaten serious bodily injury. *See id.* § 40-35-113(1). The trial court explicitly determined that other mitigating factors set forth by appellant were not applicable. The trial court further noted that appellant's actions caused long-term damage to the property and that appellant continued to take no responsibility for his actions.

Regarding probation, the trial court considered the numerous times that appellant had previously been on probation, that he had been revoked once, and that he was on probation when he committed the instant offense. Based on these facts, the trial court determined that measures less restrictive than confinement had been applied unsuccessfully to appellant. The trial court determined that a sentence of full probation would unduly depreciate the seriousness of the offense and that a sentence involving confinement would act as an effective deterrent. Finally, the trial court found that appellant was not credible, stating that appellant "in fact, has lied at this sentencing hearing." The trial court imposed a sentence of eight years for appellant's theft conviction and thirty days for his criminal trespassing conviction.

The trial court denied appellant's motion for new trial, and this appeal follows.

II. Analysis

A. Indictment

Appellant contends that the indictment did not provide proper notice because the State introduced evidence at trial of victims not named in the indictment, namely Dr. Bass's sons and wife. The State reframes appellant's challenge as an argument that there was a fatal variance between the indictment and the proof at trial. In response, the State argues that there was no variance because the identity of theft victims is not an essential element of theft. The State argues in the alternative that any variance was not material.

Both the federal and state constitutions "guarantee to the accused the right to be informed of the nature and cause of the accusation." *State v. Hill*, 954 S.W.2d 725, 727 (Tenn. 1997). A valid indictment "provides sufficient information (1) to enable the accused to know the accusation to which answer is required, (2) to furnish the court adequate basis for the entry of a proper judgment, and (3) to protect the accused from double jeopardy." *Id.* (citations omitted). "When the evidence adduced at a trial does not correspond to the elements of the offense alleged in the charging instrument, there is a variance." *State v. Keel*, 882 S.W.2d 410, 416 (Tenn. Crim. App. 1994). However, such a variance "is not fatal unless it is both material and prejudicial." *State v. Shropshire*, 45 S.W.3d 64, 71 (Tenn. Crim. App. 2000) (citing *State v. Moss*, 662 S.W.2d 590, 592 (Tenn. 1984)). Our supreme court has explained that a variance is not fatal when "(1) the defendant is sufficiently informed of the charges levied against him so that he can adequately prepare for trial and, (2) the defendant is protected against a subsequent prosecution for the same offense based on double jeopardy grounds." *State v. Mayes*, 854 S.W.2d 638, 640 (Tenn. 1993) (citing *Berger v. United States*, 295 U.S. 78, 79-82 (1935)). "[W]hen the indictment and proof substantially correspond," the variance is not material. *Id.*

In this case, there was no variance between the proof adduced at trial and the essential elements of the offense charged in the indictment. The indictment alleged that appellant took five loads of timber from Dr. Bass's property. The proof at trial was that appellant took five loads of timber from Dr. Bass's property, which he co-owned with his wife and sons. Tennessee Code Annotated section 40-13-209 states, "When any property, upon or in relation to which the offense was committed . . . [b]elongs to several partners or owners, it is sufficient to allege the ownership to be in any one (1) or more of those partners or owners." Thus, the indictment alleging ownership to be in Dr. Bass was statutorily sufficient. Moreover, any variance cannot be considered fatal because appellant's preparation for trial — based on his claim of right defense — would not have been affected by knowledge that other people held an ownership interest in the property and because "[t]he indictment, together with the record, would prohibit another prosecution" for the same offense. *State v. Charlie M. Gardner*, No. M1999-02214-CCA-R3-CD, 2001 WL 306227, at *7 (Tenn. Crim. App. Mar. 30, 2001) (noting that a defendant can rely on the entire record when pleading double jeopardy as a bar to a subsequent prosecution). Therefore, appellant is without relief as to this issue.

## B. Sufficiency of the Evidence

Appellant asserts that the evidence presented at trial was not sufficient to support his conviction for theft. He does not contest his criminal trespassing conviction. In particular, he argues that the State could not establish appellant's criminal responsibility for the actions of Eugene Carroll when Mr. Carroll was not charged with a crime and that the State could

not show that appellant was in actual possession of the stolen timber. The State responds that "the proof permitted the jury to find that [appellant] effectively exercised control over the victim's timber without his consent."

Appellant approaches his sufficiency of the evidence argument through the trial court's denial of his motion for judgment of acquittal. A motion for judgment of acquittal raises a question of law, i.e., the legal sufficiency of the evidence, for determination by the trial court. *State v. Adams*, 916 S.W.2d 471, 473 (Tenn. Crim. App. 1995) (citing *State v. Hall*, 656 S.W.2d 60, 61 (Tenn. Crim. App. 1983)). Thus, on appeal, this court applies the same standard of review both to the trial court's denial of a motion for a judgment of acquittal and to the sufficiency of the convicting evidence underlying the jury's verdict. *State v. Carroll*, 36 S.W.3d 854, 869 (Tenn. Crim. App. 1999) (citing *State v. Ball*, 973 S.W.2d 288, 292 (Tenn. Crim. App. 1998)). Therefore, we must consider "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original) (citing *Johnson v. Louisiana*, 406 U.S. 356, 362 (1972)); *see* Tenn. R. App. P. 13(e); *State v. Davis*, 354 S.W.3d 718, 729 (Tenn. 2011). To obtain relief on this claim of error, appellant must demonstrate that no reasonable trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *See Jackson*, 443 U.S. at 319. This standard of review is identical whether the conviction is predicated on direct or circumstantial evidence, or a combination of both. *State v. Dorantes*, 331 S.W.3d 370, 379 (Tenn. 2011); *State v. Brown*, 551 S.W.2d 329, 331 (Tenn. 1977).

On appellate review, "'we afford the prosecution the strongest legitimate view of the evidence as well as all reasonable and legitimate inferences which may be drawn therefrom.'" *Davis*, 354 S.W.3d at 729 (quoting *State v. Majors*, 318 S.W.3d 850, 857 (Tenn. 2010)); *see State v. Williams*, 657 S.W.2d 405, 410 (Tenn. 1983); *State v. Cabbage*, 571 S.W.2d 832, 835 (Tenn. 1978). In a jury trial, questions involving the credibility of witnesses and the weight and value to be given the evidence, as well as all factual disputes raised by the evidence, are resolved by the jury as trier of fact. *State v. Bland*, 958 S.W.2d 651, 659 (Tenn. 1997); *State v. Pruett*, 788 S.W.2d 559, 561 (Tenn. 1990). This court presumes that the jury has afforded the State all reasonable inferences from the evidence and resolved all conflicts in the testimony in favor of the State; as such, we will not substitute our own inferences drawn from the evidence for those drawn by the jury, nor will we re-weigh or re-evaluate the evidence. *Dorantes*, 331 S.W.3d at 379; *Cabbage*, 571 S.W.2d at 835; *see State v. Sheffield*, 676 S.W.2d 542, 547 (Tenn. 1984). Because a jury conviction removes the presumption of innocence that appellant enjoyed at trial and replaces it with one of guilt at the appellate level, the burden of proof shifts from the State to the convicted appellant, who must demonstrate to this court that the evidence is insufficient to support the jury's

findings. *Davis*, 354 S.W.3d at 729; *State v. Sisk*, 343 S.W.3d 60, 65 (Tenn. 2011) (quoting *State v. Hanson*, 279 S.W.3d 265, 275 (Tenn. 2009)).

To support a conviction for theft of property, the State must prove that appellant, "with intent to deprive the owner of property, . . . knowingly obtain[ed] or exercise[d] control over the property without the owner's effective consent." Tenn. Code Ann. § 39-14-103(a). Theft of property valued at $1,000 or more but less than $10,000 is a Class D felony. Tenn. Code Ann. § 39-14-105(a)(3).

Appellant's argument is based on the State's allegedly setting forth a theory of criminal responsibility. While not a separate crime, criminal responsibility is a theory by which the State may alternatively establish guilt based on the conduct of another. *Dorantes*, 331 S.W.3d at 386 (citing *State v. Lemacks*, 996 S.W.2d 166, 170 (Tenn. 1999)). However, the trial court did not instruct the jury on this theory, and without the opening statements and closing arguments, which are absent from the record, this court cannot determine whether the State actually pursued this theory. On appeal, the State argues that the proof supported appellant's conviction based on his own conduct. We agree with the State.

Viewed in the light most favorable to the State, the evidence adduced at trial revealed that appellant contracted with Eugene Carroll to clear-cut several acres of land. He showed Mr. Carroll where to cut and told Mr. Carroll to ignore flags marking the property line. A cable crossing the ridge road had been cut, and a lock had been removed from a gate barring access to Dr. Bass's property. Appellant was at the site during the logging, and he received a portion of the proceeds from the sale of the timber. The State presented evidence that the acreage cut by Mr. Carroll actually belonged to Dr. Bass. Moreover, Tommy Shaffer testified that appellant would have known that he did not own the logged acreage because Mr. Shaffer had told him in the past that if he cut timber near the ridge road, he would not be on his own land. Appellant claimed that the land survey admitted into evidence by the State was incorrect and that his property extended to ten feet away from the ridge road.

The Tennessee Pattern Jury Instructions' definition of "exercise control over property," as charged to the jury, is helpful to our analysis of the sufficiency of the evidence:

> "Exercise control over property" is defined as the right to direct how property shall be used or disposed. Generally, one must possess the right of possession in property in order to exercise control over it. Such possession may be actual or constructive, sole or joint. Also, one may have the right to control property without having a possessory interest. In such instances, if the defendant takes some action with the intent to deprive the owner of the property, and the defendant did so knowingly and without the owner's effective consent, the jury

-9-

would be justified in returning a verdict of guilty. Anyone who is in a position to take some action that deprives the owner of property is in a position to exercise control.

T.P.I.-Crim. 11.01. Under the facts presented at trial, appellant exercised control over Dr. Bass's property by contracting with Mr. Carroll to log the acreage — despite not actually cutting the timber, hauling it, and selling it himself. Furthermore, he knew that the land was Dr. Bass's, and he received compensation for the sale of the timber. Thus, it was reasonable for a jury to find appellant guilty of theft of property. Moreover, the State presented evidence of the value of the stolen timber, such that the jury appropriately determined that the value of the property stolen was between $1,000 and $10,000. Therefore, the evidence was sufficient to support appellant's conviction, and he is without relief as to this issue.

## C. Sentencing

Appellant argues that his sentence was excessive under the circumstances of this case. The State responds that the trial court did not abuse its discretion in determining appellant's sentence. We agree with the State.

In determining an appropriate sentence, a trial court must consider the following factors: (1) the evidence, if any, received at the trial and the sentencing hearing; (2) the presentence report; (3) the principles of sentencing and arguments as to sentencing alternatives; (4) the nature and characteristics of the criminal conduct involved; (5) evidence and information offered by the parties on mitigating and enhancement factors; (6) any statistical information provided by the administrative office of the courts as to sentencing practices for similar offenses in Tennessee; (7) any statement the defendant makes on his own behalf as to sentencing; and (8) the potential for rehabilitation. Tenn. Code Ann. §§ 40-35-103(5), -113, -114, -210(b). In addition, "[t]he sentence imposed should be the least severe measure necessary to achieve the purposes for which the sentence is imposed." Tenn. Code Ann. § 40-35-103(4).

Pursuant to the 2005 amendments, the Sentencing Act abandoned the statutory presumptive minimum sentence and rendered enhancement factors advisory only. *See* Tenn. Code Ann. § 40-35-114, -210(c). The 2005 amendments set forth certain "advisory sentencing guidelines" that are not binding on the trial court; however, the trial court must nonetheless consider them. *See id*. § 40-35-210(c). Although the application of the factors is advisory, a court shall consider "[e]vidence and information offered by the parties on the mitigating and enhancement factors set out in §§ 40-35-113 and 40-35-114." *Id*. § 40-35-210(b)(5). The trial court must also place on the record "what enhancement or mitigating factors were considered, if any, as well as the reasons for the sentence, in order to ensure fair

and consistent sentencing." *Id*. § 40-35-210(e). The weighing of mitigating and enhancing factors is left to the sound discretion of the trial court. *State v. Carter*, 254 S.W.3d 335, 345 (Tenn. 2008). The burden of proving applicable mitigating factors rests upon appellant. *State v. Mark Moore*, No. 03C01-9403-CR-00098, 1995 WL 548786, at *6 (Tenn. Crim. App. Sept. 18, 1995). The trial court's weighing of the various enhancement and mitigating factors is not grounds for reversal under the revised Sentencing Act. *Carter*, 254 S.W.3d at 345 (citing *State v. Devin Banks*, No. W2005-02213-CCA-R3-DD, 2007 WL 1966039, at *48 (Tenn. Crim. App. July 6, 2007), *aff'd as corrected*, 271 S.W.3d 90 (Tenn. 2008)).

A trial court should base its decision regarding alternative sentencing on the following considerations:

> (A)   Confinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct;
>
> (B)   Confinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses; or
>
> (C)   Measures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant.

Tenn. Code Ann. § 40-35-103(1).

When an accused challenges the length and manner of service of a sentence, this court reviews the trial court's sentencing determination under an abuse of discretion standard accompanied by a presumption of reasonableness. *State v. Bise*, 380 S.W.3d 682, 707 (Tenn. 2012). This standard of review also applies to "the questions related to probation or any other alternative sentence." *State v. Caudle*, 388 S.W.3d 273, 278-79 (Tenn. 2012). If a trial court misapplies an enhancing or mitigating factor in passing sentence, said error will not remove the presumption of reasonableness from its sentencing determination. *Bise*, 380 S.W.3d at 709. This court will uphold the trial court's sentencing decision "so long as it is within the appropriate range and the record demonstrates that the sentence is otherwise in compliance with the purposes and principles listed by statute." *Id.* at 709-10. Moreover, under such circumstances, appellate courts may not disturb the sentence even if we had preferred a different result. *See Carter*, 254 S.W.3d at 346. The party challenging the sentence imposed by the trial court has the burden of establishing that the sentence is erroneous. Tenn. Code Ann. § 40-35-401, Sentencing Comm'n Cmts.; *State v. Ashby*, 823 S.W.2d 166, 169 (Tenn. 1991).

In this case, appellant was convicted of a Class D felony, and as a multiple offender, he was subject to a sentence of four to eight years. Tenn. Code Ann. § 40-35-112(b)(4). The trial court found that five enhancement factors and one mitigating factor applied — none of which appellant contests. Moreover, the trial court considered alternative sentencing but determined that a sentence involving confinement was appropriate to avoid depreciating the seriousness of the offense and because sentences involving release to the community had recently been applied unsuccessfully to appellant, as shown by the fact that he was on probation when he committed the instant offense. On appeal, appellant attempts to minimize the seriousness of his offense by downplaying it as "essentially a boundary dispute" and noting that only one percent of Dr. Bass's property was harmed. However, the trial court noted that appellant never took full responsibility for his actions, that he was less than credible at the sentencing hearing, and that Dr. Bass's property would not recover for up to one hundred years. Based on our review of the record, we conclude that the trial court's sentencing decision was "within the appropriate range" and was "in compliance with the purposes and principles listed by statute." *Bise*, 380 S.W.3d at 709-10. Appellant is without relief as to this issue.

### D. Jury Instructions

Appellant argues that the trial court erred by not instructing the jury with regard to a mistake of fact defense. However, this issue was not included in the motion for new trial. Therefore, appellant's claim regarding the jury instructions is waived under Tennessee Rule of Appellate Procedure 3(e).

### CONCLUSION

Based on the record, the applicable law, and the briefs of the parties, we affirm the judgments of the trial court.

_____
ROGER A. PAGE, JUDGE