IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
April 2, 2019 Session

## STATE OF TENNESSEE v. RICKY JORDAN

**Appeal from the Criminal Court for Shelby County**
No. 16-02447     Jennifer S. Nichols, Judge

_____

### No. W2018-01190-CCA-R3-CD
_____

Defendant, Ricky Jordan, was convicted after a jury trial of aggravated sexual battery of a victim less than thirteen years of age and was sentenced to serve eleven years at 100 percent. On appeal, Defendant claims that the trial court committed plain error when it did not exclude evidence of other incidents of sexual contact between Defendant and the victim that occurred during the time period set forth in the indictment and that the evidence was insufficient to support his conviction. After a thorough review, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

TIMOTHY L. EASTER, J., delivered the opinion of the court, in which JOHN EVERETT WILLIAMS, P.J., and ALAN E. GLENN, J., joined.

Lance R. Chism (on appeal) and Joseph McClusky (at trial), Memphis, Tennessee, for the appellant, Ricky Jordan.

Herbert H. Slatery III, Attorney General and Reporter; Jonathan H. Wardle, Assistant Attorney General; Amy P. Weirich, District Attorney General; Devon Lepeard and Paige Munn, Assistant District Attorneys General, for the appellee, State of Tennessee.

## OPINION

A Shelby County grand jury indicted Defendant for aggravated sexual battery of a victim less than thirteen years of age, his grandson, occurring between January 1, 2009, and December 1, 2012. Prior to trial, Defendant filed a motion requesting that the State be required to elect the factual basis for the charged offense and a motion requesting that the trial court exclude evidence of sexual acts that were not within the scope of the

State's election. On the day before trial, the trial court heard argument on the motions and ruled that the State would be required to make its election at the close of its proof. The following facts were adduced at trial.

C.J.,[1] the victim's mother and Defendant's daughter, would take the victim to stay with Defendant a couple times each month. Sometimes, C.J. would stay with the victim at Defendant's house; other times, C.J. would just drop the victim off at Defendant's house. C.J. never asked Defendant to babysit the victim but would agree when Defendant offered. Eventually, Defendant was babysitting the victim "[a]t least five times a month." When C.J. grew tired of some family drama, she decided to no longer take the victim to Defendant's home.

On one occasion when the victim was four years old,[2] his mother dropped him off at Defendant's apartment. Defendant allowed the victim to play outside, and the victim got dirty. The victim came back inside the apartment and went to take a bath. The victim could not reach the center of his back as he was washing. So, he called Defendant into the bathroom. According to the victim, "he started to wash my back. Then . . . he would put his hand towards my stomach and started to go down and rub my private part." This went on for about five minutes. Defendant then told the victim to dry off and go to bed. The victim's mother picked him up the next morning.

At the age of five, the victim sat on a bed at the Defendant's house, a different location than Defendant's apartment. Defendant walked over to the victim and removed the victim's pants and underwear. Defendant "started to rub on [the victim's] private part kind of yanking it[.]" This lasted for ten to fifteen minutes while the victim was "[k]ind of screaming or crying." Defendant then kissed the victim on the mouth. All of this occurred while the victim's grandmother was in the den of the house.

The victim recalled that incidents like this happened seven or eight times when he was between the ages of five and six. During these incidents, Defendant would tell the victim that he was "fixing" the victim. When the victim was five years old and on approximately the fourth occasion that Defendant touched the victim, Defendant exposed himself and told the victim that it was the victim's turn to "fix" Defendant. Defendant made the victim put his hands on Defendant's "private part" and made the victim "go up and down on [Defendant's] private part." Then, "[s]tuff came out of [Defendant's] private part." Afterwards, Defendant went to sleep.

---

[1] It is the policy of this Court to protect the identity of the victims of sexual abuse. Therefore, we will not use the name of the victim's mother.

[2] The victim only references his age at the time that the abuse occurred. The victim was born on September 23, 2005. Therefore, the victim would have been three years old on January 1, 2009, and six years old on December 1, 2012, which are the dates used to establish the time period for the indictment.

- 2 -

On an occasion after the victim had turned six, Defendant and the victim went to a McDonald's. Defendant asked if the victim had to use the restroom, and the victim responded negatively. Nevertheless, Defendant insisted that the victim needed to use the restroom but that the victim just did not want to say "yes." Defendant took the victim to the restroom and they both went into a stall. Defendant pulled down the victim's pants and began to touch the victim's "private part." This incident lasted approximately twenty minutes.

During the time period that Defendant babysat the victim, Defendant bought the victim a small dog as a present, and he told the victim that the dog would be his if the victim kept coming over to Defendant's house. Defendant told the victim that he could have a laptop if he came over to Defendant's house more often. When the victim said that he was going to tell his mother about the incidents, Defendant told the victim that he would kill the victim's mother were that to occur.

When the victim was in fourth grade, he told a teacher about the abuse from his grandfather. The teacher sent the victim to a school counselor, whom the victim did not trust, and the victim denied any abuse when asked by the counselor. Eventually, the victim could no longer keep the incidents a secret. One day when the victim got into some trouble at an afterschool program, Jametris Jones, the director of the program, spoke with the victim in her office. At that time, the victim felt that he had a "gateway" to say something about his abuse. Eventually, the victim was able to tell his mother and grandmother too.

In 2010, Ms. Jones had been a pre-school teacher where the victim attended Pre-K. Though she taught in a different classroom, Ms. Jones became familiar with the victim because she noticed his "aggressive" and "angry" behavior. The victim would have outbursts that included throwing chairs and screaming. After an outburst, the victim would calm down and apologize on his own accord. The victim graduated Pre-K, and Ms. Jones did not see the victim for several years.

In 2015, Ms. Jones, now the academy director, became again concerned about the victim's behavior. At eight or nine years old, the victim was "very sexual, very aggressive," and his behavior had "intensified." Her concern increased when the victim began to draw sexual pictures. When Ms. Jones would ask the students to draw pictures about their field trips or camp, the victim would draw "very sexual pictures of female body parts [and] male body parts." The victim would also talk about sex with the other children. Particularly, the victim instructed another girl in the classroom about "how to suck a penis." Ms. Jones described the victim as "[e]xtremely, extremely sexual beyond anything I had ever seen in a child that age."

One day in the summer of 2015, Ms. Jones saw two young girls and the victim sharing makeup. Assuming the makeup belonged to one of the girls, Ms. Jones asked one of the girls to put the makeup away and told the group of children that they were not supposed to share makeup. One of the girls announced that the makeup belonged to the victim. Ms. Jones asked the victim if his mother knew that he had makeup, and the victim explained that the makeup belonged to him. When Ms. Jones took the makeup, the victim became "irate." He screamed and threw chairs. Ms. Jones took the victim to her office, and she perceived him to be nervous and "fidgety." Ms. Jones talked to him about the makeup and told him not to bring things from home to school. In response, the victim shared that he had been "molested" and that is why he liked makeup. Ms. Jones comforted the victim and contacted the Department of Children's Services ("DCS").

During cross-examination at trial, the victim revealed that he had not drawn the inappropriate pictures that Ms. Jones testified about. Rather, someone else had drawn the picture, and the victim had simply brought it to the after-school day care. The victim claimed that this incident with the picture occurred in 2016, after he had revealed the abuse to Ms. Jones. Also, the victim clarified the situation with the makeup and the other girls. According to the victim, he was putting the makeup on the two girls, but he had not brought the makeup to the day care. After Ms. Jones took him out of the classroom, she asked him if anyone had touched him. The victim was confused at first and thought that she was talking about getting a "whooping." Then, Ms. Jones clarified her question, and the victim denied ever being touched. However, a different teacher asked the victim again, and he told them about what had happened.

A week after his disclosure to Ms. Jones, the victim went to the Memphis Child Advocacy Center and was interviewed by Letitia Cole, a forensic interviewer. During that interview, the victim became uncomfortable and did not disclose everything that happened to him. However, he maintained at trial that everything he disclosed was true.

During the interview, the victim said that Defendant would take the victim's clothes off and "yank" the victim's "privacy." The victim recalled the incidents happening in Defendant's bedroom. The victim remembered Defendant saying, "you know, you want it." The victim said that he would start screaming, and then Defendant would hit or push the victim. Ms. Cole showed a male anatomical diagram to the victim and asked what the victim was referring when he used the term "the privacy." The victim pointed to the penis on the diagram, and Ms. Cole circled that area of the diagram and labeled it "privacy." The victim also revealed that Defendant had shown his "privacy" to the victim. The victim said that Defendant would try to put his "privacy" on the victim. When Defendant did this, the victim would scream. The victim denied ever being asked by Defendant to touch Defendant's body. The victim also revealed that Defendant tried to kiss him on the mouth. The victim said that Defendant would put his tongue in the

- 4 -

victim's mouth. Defendant told the victim that he should not tell anyone or Defendant would hurt the victim's mother.

C.J. was out of town on vacation when she received a phone call from the "Memphis Advocacy Center" telling her about the disclosure of sexual abuse made by the victim. C.J. spoke to the victim, and he confirmed everything. C.J. was upset, hurt, and devastated. She told the victim that she would be home as soon as possible to talk about the situation. When she returned, C.J. took the victim to the Child Advocacy Center for an interview. Subsequently, C.J. enrolled the victim in counseling at the Child Advocacy Center, which has helped the victim.

The State elected to submit to the jury the act that occurred when the victim was five years old "wherein he described touching the defendant's private part and stuff came out." After deliberation, the jury found Defendant guilty as charged. Following a sentencing hearing, the trial court imposed an eleven year sentence to be served at 100 percent. Defendant filed a motion for new trial, but the trial court denied the motion. Defendant now appeals.

*Analysis*

*I. Election of Offenses*

Defendant argues that the trial court erred when it did not grant Defendant's pre-trial motion to exclude any reference to sexual acts alleged to have been committed by Defendant against the victim other than the act elected by the State for trial. Defendant admits that he failed to include this issue in his motion for new trial, resulting in its waiver; thus, he specifically seeks plain error review. The State counters that the prosecution is allowed to present evidence of sexual acts that occurred during the time frame set forth in the indictment and then elect a specific act at the close of the State's case-in-chief. We agree with the State.

In order to be granted plain error relief, Defendant bears the burden of establishing the following five factors:

> (1) the record clearly establishes what occurred in the trial court; (2) a clear and unequivocal rule of law was breached; (3) a substantial right of the accused was adversely affected; (4) the issue was not waived for tactical reasons; and (5) consideration of the error is necessary to do substantial justice.

*State v. Minor*, 546 S.W.3d 59, 67 (Tenn. 2018). "If a defendant fails to establish any of these criteria, an appellate court must deny relief under the plain error doctrine, and an

appellate court need not consider all criteria when the record demonstrates that one of them cannot be established." *Id*.

In the sex crimes context, the general prohibition of evidence relating to other crimes or bad acts is relaxed, especially where the defendant is alleged to have committed sexual offenses over a lengthy period of time against young children. *State v. Qualls*, 482 S.W.3d 1, 9 (Tenn. 2016) (citing *State v. Johnson*, 53 S.W.3d 628, 631 (Tenn. 2001); *State v. Rickman*, 876 S.W.2d 824, 828 (Tenn. 1994); *State v. Shelton*, 851 S.W.2d 134, 137 (Tenn. 1993)). Even when the prohibition is relaxed in this context, the admission of other sexual acts is not without its limits. Our supreme court set the boundaries of what evidence of other sexual acts is admissible by saying, "'[W]here the indictment charges that sex crimes occurred over a span of time,' rather than on specific dates, then 'evidence of unlawful sexual contact between the defendant and the victim allegedly occurring during the time charged in the indictment is admissible." *Qualls*, 482 S.W.3d at 9 (quoting *Rickman*, 876 S.W.2d at 828). In order to ensure jury unanimity when the prohibition of evidence relating to other crimes or bad acts is relaxed, the State is required to elect for each count the specific incident on which the jury should deliberate to determine the defendant's guilt. *Id*. Additionally, our supreme court has made clear that the State is not required to elect the specific offense until "the conclusion of the State's case-in-chief." *Id*. at 10.

This Court has provided further clarification regarding the rule set forth in *Rickman*. Prior to the admission of other crimes or bad acts in the sex crimes context, "the State must also show that the young victim can only provide a vague description of events and that the State must take a 'wait and see' approach to the victim's testimony in order for it to show that the defendant committed the offense or offenses alleged in the indictment." *State v. Danny Ray Smith*, No. E2012-02587-CCA-R3-CD, 2014 WL 3940134, at *13 (Tenn. Crim. App. Aug. 13, 2014), *no perm. app. filed*. On the other hand, if the State can pinpoint a specific event that occurred during the time period found in the indictment, and the victim can testify to that specific event, then the *Rickman* exception, or relaxation of the rules, does not apply. *Id*. Furthermore, if the State has narrowed the scope of the indictment by filing a bill of particulars and indicating the specific event that it intends to elect, then the State cannot present evidence of other crimes or bad acts outside of the scope of the bill of particulars. *State v. Jeff Carter*, No. M2009-02399-CCA-R3-CD, 2010 WL 5343212, at *11, (Tenn. Crim. App. Dec. 16, 2010), *no perm. app. filed*.

Defendant has failed to show that a clear an unequivocal rule of law was breached. In Defendant's brief, he states, "During the trial, the State during its case-in-chief presented evidence of numerous sexual offenses that Defendant had committed against the victim during the time period alleged in the indictment." Defendant does not claim that any of the events that the victim testified to at trial were outside the time period

alleged in the indictment. Also, Defendant has failed to show that, prior to trial, the State could pinpoint a specific event that occurred during the time period found in the indictment and that the victim could testify to that specific event. The scenario presented by this case is exactly the type of scenario to which the *Rickman* exception applies. The victim could not pinpoint the date of each specific act and even changed his allegations between various interviews and his testimony at trial. The State was confined to a "wait and see" approach, and thus the trial court did not commit plain error when it allowed the State to elect an offense at the close of its case-in-chief.

## II. Sufficiency of the Evidence

Defendant also contends that the evidence is insufficient to support his conviction because "no reasonable juror could have believed the victim's testimony." As proof of this, Defendant points to the victim's initial denial that any abuse occurred, the victim's delay in making any allegations, and the inconsistencies between the victim's forensic interview and the victim's testimony at trial. The State responds that the evidence is sufficient. We agree with the State.

Well-settled principles guide this Court's review when a defendant challenges the sufficiency of the evidence. The relevant question is whether any rational trier of fact could have found the accused guilty of every element of the offense beyond a reasonable doubt. *See* Tenn. R. App. P. 13(e); *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). The jury's verdict replaces the presumption of innocence with one of guilt; therefore, the burden is shifted onto the defendant to show that the evidence introduced at trial was insufficient to support such a verdict. *State v. Reid*, 91 S.W.3d 247, 277 (Tenn. 2002). The prosecution is entitled to the "'strongest legitimate view of the evidence and to all reasonable and legitimate inferences that may be drawn therefrom.'" *State v. Goodwin*, 143 S.W.3d 771, 775 (Tenn. 2004) (quoting *State v. Smith*, 24 S.W.3d 274, 279 (Tenn. 2000)). Questions concerning the "'credibility of the witnesses, the weight to be given their testimony, and the reconciliation of conflicts in the proof are matters entrusted to the jury as the trier of fact.'" *State v. Wagner*, 382 S.W.3d 289, 297 (Tenn. 2012) (quoting *State v. Campbell*, 245 S.W.3d 331, 335 (Tenn. 2008)). "'A guilty verdict by the jury, approved by the trial court, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the prosecution's theory.'" *Reid*, 91 S.W.3d at 277 (quoting *State v. Bland*, 958 S.W.2d 651, 659 (Tenn. 1997)). It is not the role of this Court to reweigh or reevaluate the evidence, nor to substitute our own inferences for those drawn from the evidence by the trier of fact. *Id.* The standard of review is the same whether the conviction is based upon direct evidence, circumstantial evidence, or a combination of the two. *State v. Dorantes*, 331 S.W.3d 370, 379 (Tenn. 2011); *State v. Hanson*, 279 S.W.3d 265, 275 (Tenn. 2009).

In order to be convicted of aggravated sexual battery, the State had to prove that there was unlawful sexual contact between Defendant and the victim, who was less than thirteen years of age. T.C.A. § 39-13-504(a)(4). "Sexual contact" means the intentional touching of anyone's intimate parts—or the clothing covering those parts—if the touching can be "reasonably construed as being for the purpose of sexual arousal or gratification." T.C.A. § 39-13-501(6). The "primary genital area" is considered an "intimate part." T.C.A. 39-13-501(2).

We conclude that the evidence is sufficient to support Defendant's conviction for aggravated sexual battery. The victim testified that when he was five years old, Defendant exposed himself and made the victim put his hands on Defendant's "private part." Defendant made the victim "go up and down on [Defendant's] private part," and then, "[s]tuff came out of [Defendant's] private part." The victim's testimony alone is sufficient to support Defendant's conviction. *See State v. Elkins*, 102 S.W.3d 578, 582-83 (Tenn. 2003) (stating that a child victim's testimony regarding sexual contact can be sufficient to support a conviction); *State v. Shropshire*, 45 S.W.3d 64, 70 (Tenn. 2000) (holding that the evidence was sufficient for a conviction of aggravated sexual battery where the victim testified that she was under thirteen years old and the defendant forced her to touch his penis). Also, we do not entertain questions concerning the credibility of a witness because those are matters entrusted to the jury. *Wagner*, 382 S.W.3d at 297. Therefore, Defendant is not entitled to relief.

*Conclusion*

For the aforementioned reasons, the judgment of the trial court is affirmed.

_____
TIMOTHY L. EASTER, JUDGE